No. 54.—DOE *ex dem.* WILLIAM HENDERSON, plaintiff in error, *vs.* ROE and WILLIAM P. HACKNEY and others, defendants.

[1.] To make a certificate from the Executive Department admissible in evidence, it is not necessary that the certificate should give a copy of that to which it relates.    It is sufficient that it gives, *substantially*, the contents, or a part of the contents, of the thing to which it relates.

[2.] A grant is made to Elias Nicks.    Evidence going to show that the grantee is sometimes known as Elias Nicks and sometimes as Eli Nicks, is not such evidence as varies or contradicts the grant.

[3.] The Court or Jury may compare two documents together, when properly in evidence, and from that comparison, form a judgment upon the genuineness of the handwriting, or the identity of the writers.

Ejectment, in Whitfield Superior Court.    Tried before Judge JOHN H. LUMPKIN, April Term, 1854.

The plaintiff in this cause introduced a deed, dated August 5th, 1839, from *Eli* Nicks to himself, for the land in dispute; and a grant from the State to *Elias* Nicks, of Walden's district, Pulaski County, for the same lot, dated May the 10th, 1841, recorded 23d January, 1840.    The land was drawn in the Cherokee Land Lottery.

The plaintiff then offered in evidence a certificate from the Secretary of the Executive Department, under the seal of that department, to the effect that he had examined the lists for

draws in said lottery, returned from Pulaski County; and that he found the name of Elias Nicks of Walden's District entered for two draws; and the name of Miles Nicks of McDaniel's District, for one draw, and that no other person, by the name of Nicks, was entered on said lists from that county.

This evidence was objected to, and was ruled out by the Court; which is excepted to by the plaintiff.

The plaintiff then offered the testimony of Adon Scarborough, James Holland, and John Holland, taken by interrogatories, which was to the effect, that the witnesses were acquainted with Walden's District in Pulaski County, at the time when the draws for the Cherokee Lottery were given in; that they knew a man in the District named Eli Nicks, but none named Elias Nicks; that Eli Nicks claimed to be the drawer of the lot in question; that they never knew him to spell his name Elias, nor to assume any other name than Eli; and that it was common for persons to give in for draws in other counties than where they lived, but it was common for them, in that case, to state the county and district where they lived.

To this testimony, defendants' Counsel objected, on the ground that it attacked the grant; which could only be done by a proceeding instituted for that purpose. The objection was sustained by the Court, and the testimony excluded; to which plaintiff excepted.

Plaintiff then proved, that in 1847, he had commenced building a house on the lot; that going there one morning, he found Morris, one of the defendants, in the house, with several others; that Morris refused to let him have possession—claimed the land as his own, and offered to compare titles.

Plaintiff then proved by William P. Hackney, that he (Hackney) went on the lot as tenant of Morris, in 1846.

Here the plaintiff closed.

Defendant introduced a deed for the lot, from Elias Nicks' (describing himself as of Dale County, Ala. but formerly of Walden's District, Pulaski Co. Geo.) to Absalom Holcombe, dated 16th May, 1841, and recorded 8th Oct. 1842.

Defendant traced title from Holcombe to himself, and closed.

Plaintiff requested the Court to charge the Jury, that if they were satisfied that the same person executed the two deeds to plaintiff and to Holcombe, that the oldest deed (being recorded in time) passed the title to the first purchaser.

Which charge the Court refused to give, but charged the Jury, that they had no right to compare the signatures of the deed to Henderson, with that to Holcombe, for the purpose of determining whether the same person made both deeds, because that would be indirectly attacking the grant, which the Court had held could not be done collaterally.

The Court further charged, that if Hackney was in possession under Morris, in 1846, and continued in possession in 1847, then Henderson, in 1847, was a trespasser, and could not recover on the strength of a possession thus taken; that in no event could the plaintiff recover against one in possession, and not a trespasser, when paramount title was shown in another; and that, if there was a grant to Elias Nicks, that did show paramount title out of the plaintiff; and further, that the Court had refused to permit the plaintiff to show that Eli and Elias Nicks were one and the same person, and the Jury could not presume nor infer it. To which charges the plaintiff excepted.

The Jury found for defendants, and plaintiff assigns error on the various rulings of the Court, as excepted to.

SHACKELFORD, HANSELL, MARTIN & WOFFORD, for plaintiff in error.

T. R. MOORE, AKIN, UNDERWOOD, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The deed to Henderson, the plaintiff below, having been made by *Eli* Nicks, and the grant from the State having been made to *Elias* Nicks, it was important to Henderson to show that *Eli* Nicks and *Elias* Nicks were the same person.

To show this, any thing going to show how many Elias Nickses or Eli Nickses there were in the district of the residence

of the drawer, at the time of the giving in for draws, would be pertinent evidence. And how many there were of these, the certificate from the Executive Department would go to show.

That certificate, therefore, was relevant.

Was it also legal evidence? The Court below rejected it, but on what ground, does not appear. The ground taken before this Court, for sustaining the rejection of it, was that the certificate does "not purport to contain a *copy* of any *record document* or paper of file"; and the Act of 1819, (*Prin. Dig.* 215,) was cited in support of this ground. *That* Act, it is true, does not authorize the use of such a certificate, as evidence. But there is another and a later Act which does—the Act of 1830. (*Prin. Dig.* 220.)

This Act makes the certificate of any public officer, under his hand and seal of office, if one is attached thereto, either of this State or any county thereof, in relation to any matter or thing pertaining to their respective offices, or which, by presumption of law, properly pertains thereto, admissible as evidence, before any Court of Law or Equity in this State. This is the Act, and this does not say that the certificate to be admissible, must give a *copy* of something. It is to be admissible, if it *relates* to "any matter or thing" pertaining to the office of him who gives it. And a certificate may relate to a matter or thing, without giving a copy of it. If it states that such and such are the contents of the thing, and such and such are not, it relates to the thing. And this is what this certificate does. It certifies that certain names of the Nickses appear on the list of drawers of land, for a particular district and that no other names of the Nickses do. Instead of giving, by copy, the whole contents of the list, it gives, *substantially*, what is part of the contents of the list; and it certifies that the part given is all that the list contains of the kind given.

This list was a thing which pertained to the Executive Office.

[1.] The certificate, therefore, was legal, and being also relevant, it was admissible in evidence. The Court, therefore, erred in rejecting it.

[2.] The interrogatories offered by the plaintiff, and rejected by

the Court, were such, that if they had been admitted to the Jury, the Jury might, perhaps, have inferred from them, that the Eli Nicks of the plaintiff's deed, and the Elias Nicks of the grant, were one and the same person; and that that person sometimes passed by the name of Eli, sometimes by the name of Elias.  And such an inference, if made, would not be in contradiction to or in variance of the grant.  A grant is made to a person, not to a name.  (11 *Ga.* 282.)

These interrogatories, therefore, were admissible for the purpose of showing that the Eli Nicks of the plaintiff's deed, and the Elias Nicks of the grant, were one and the same person— a person who was known by the one name, as well as by the other: but they were not admissible, for the purpose of showing that the true drawer was a man named *Eli* Nicks; and that by mistake, the grant was issued to *another* man named *Elias* Nicks.

The Court, therefore, should have admitted them.

[3.] The Court or Jury may compare two documents together, when *properly in evidence*, and from that comparison, form a judgment upon the genuineness of the hand-writing, or the identity of the writer. (*Phil. Ev. note* 915. 1 *Green. Ev.* §578.)

The Court should have told the Jury, therefore, that they might compare the signatures of the two deeds, one signed Eli Nicks, the other Elias Nicks, to see whether the signatures were both made by the same person, for these deeds were properly in evidence; and if made by the same person, the older ought to have prevailed.

The decision of these questions makes it unnecessary to decide the others.

There ought to be a new trial.