## VERZAN v. McGREGOR et al.

THE general rule is, that it is for the Court to determine all questions relating to the admissibility of evidence; but when the question of its admissibility depends upon the decision of other questions of fact, such as the execution of a contract or agreement, and the testimony is conflicting as to whether the instrument was in fact executed or delivered, it is proper to submit this question to the jury, under proper instructions from the Court.

Where the party offering the instrument, makes out a *prima facie* case of its execution, the other party should not be allowed to introduce counter proof before the instrument is read to the jury.

Parol evidence is admissible when it relates to the execution or authenticity of a written instrument, or to its delivery, or whether the delivery was absolute or conditional.

Where a written agreement is signed and executed by the parties, and at the same time an addition is made in writing upon the same paper, beneath the signature, which additional writing is not signed by either of the parties independent of the signatures of the parties which precede it, parol evidence may be introduced to show whether the parties intended this addition to form a part of the contract.

Defendants entered into a contract with the Table Mountain Ditch Co. to perform certain labor on the ditch of the company. The contract contained many stipulations; one of which was, that if the work was not completed by a certain time, defendants should forfeit the contract, and also all moneys due on the same: *held,* that if this clause in the contract was inserted under a mistake as to the amount and difficulty of the labor to be performed, it was void; and that it did not deprive defendants of the benefit of the other clauses in the agreement.

If the pleadings are under oath, and the replications in response to a material averment of the answer undertake to deny, by saying "It is not true," etc., the replication is evasive and does not specifically deny the averment.

APPEAL from the District Court, Fifteenth Judicial District, Butte County.

The facts are stated in the opinion of the Court.

*H. O. Beatty*, for Appellant.

That the Court was the proper tribunal to determine the admissibility of the memorandum, I refer to the following authority: (1 Greenl. on Ev. Sec. 49.) In equity, time is seldom of the essence of a contract; in law, it generally is, unless waived. It is true, Courts always, to prevent injustice, seize on slight circumstances to determine that time is waived. And to prevent a party from sustaining a total loss—where he only fails in time—the Courts always allow an action in assumpsit (not on the contract) in the *quantum meruit*, or some other of the common counts, where the defendant has accepted the work, service, material, or other thing from the plaintiff, whereby he has actually been benefited; but then plaintiff can avail himself of no special provision of a written contract. (2 Parsons on Cont. 172.)

*S. Rosenbaum*, for Respondents.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of a ditch or canal used to convey water for mining purposes. The ditch was originally owned by the " Table Mountain Ditch Co.," and had been sold under a judgment and execution against the company, and purchased by one Rhodes, and by him conveyed to the plaintiff. The sale to Rhodes was made on the sixteenth day of April, 1860. On the twenty-ninth day of May, 1859, the defendants entered into contract with the company, by which they agreed to finish, widen, deepen, and repair the ditch; dig a tunnel, and erect several flumes connected with the ditch; and agreed to finish the work in November, 1859. The defendants are in possession of the property under this contract; claiming the right to retain the possession until they are paid for the labor done on the work. This claim of the defendants is founded upon the following writing, which is written under the contract, just below the signatures of the parties, but is not signed by either of them, independent of the signatures to the contract itself, which precede it. It is as follows: " The

Table Mountain Ditch Co. agree to give to the parties of the first part, the right of way for digging the ditch. And the parties of the second part, *agreeing to give the parties of the first part the ditch as security till the whole is paid.* Also agreeing to build two sufficient reservoirs to hold water from said ditch; one at the end of the long flume, also one on Table Mountain. Failing to build such reservoirs, to pay interest on all money due the parties of the first part."

One important question in the case is, whether or not this memorandum forms any part of the contract between the parties. On this point Nesbit and Saucier, the subscribing witnesses, whose names are subscribed to the main contract above the memorandum, were examined before the Court. Nesbit testified that he was present when the contract was signed, and was called to witness it. Several hours were spent in discussing it. Defendants wished security for their pay. Tyre (who acted for the company) said he was willing to give security for their pay, if the defendants would give security for finishing their work; and it was agreed that the defendants should give security for the performance of their contract to the amount of five hundred dollars. Tyre then wrote the memorandum as security for the payment on the contract, and the defendants left to get security before the memorandum was signed; that when he signed as a subscribing witness, McGregor was on one side of him and Tyre on the other. Witness asked why the memorandum was not signed. Tyre replied that the memorandum had nothing to do with the contract; and McGregor was standing by his side at the time, within three feet of him, and made no response. He supposes McGregor must have heard him ask the question. The memorandum was to be executed conditionally; and he is certain defendants so understood it. The defendants refused to take the contract unless security was given; and they said they would give security to the company, if the latter would give the memorandum. Nothing was said about the memorandum when the contract was delivered.

Saucier, the other attesting witness, testified that he was present when the memorandum was written. It was talked over for an hour or more. Tyre wrote the memorandum and read it, and both

parties then signed. The memorandum seemed to make the contract satisfactory; noticed that the paper was signed above the memorandum. The paper was ready for signing before the memorandum was written. It was read as a part of the contract. The witness thought it a part of the contract, and thinks all thought so. He did not hear any consultation about security. Several other witnesses, including McGregor, one of the defendants, were examined on this point, and some of them state that it was agreed that it was written as a mere memorandum until the defendants gave security in the amount of five hundred dollars, and then to be signed. It seems that the defendants never gave this five hundred dollars security. The Court below, after hearing all the evidence upon this point, held, that the memorandum formed no part of the contract, and excluded it from the jury; but afterwards, upon a statement of the defendants, that they claimed that the acts of the company were a fraud upon them if the memorandum was excluded, and that this fraud was for the jury to determine, the Court permitted it to be read to the jury in connection with the parol evidence. The jury found a general verdict for the defendants, and also a special verdict upon several questions; among others, " that the defendants had a lien and possession of the ditch as security for the payment of their demands for labor and materials furnished and used in said ditch, tunnels, and flumes," and that Rhodes and the plaintiff had notice of the lien.

The first question to determine is, whether the Court erred in submitting the contract and memorandum together to the jury. The general rule is, that it is for the Court to determine all questions relating to the admissibility of evidence; and when this question of admissibility depends upon the decision of other questions of fact, such as the execution of a contract or agreement, these preliminary facts are, in the first instance, to be tried by the Judge; but he may, at his discretion, take the opinion of the jury upon them. Often these preliminary questions are mixed questions of law and fact; or the evidence may be conflicting as to whether the instrument was in fact executed or delivered by the parties; in which case it is proper to submit the question to the jury under proper instructions from the Court. It is enough to authorize such

submission to the jury that there is some proof of the facts on which the right to admit the evidence is predicated. (1 Greenl. Ev. Sec. 49.) It is often the case that the main question in controversy is the execution and authenticity of the instrument. And the rule is, that if there be no evidence of authenticity, the instrument cannot be read to the jury; but if there be any fact or circumstances tending to prove the authenticity from which it might be presumed, then the instrument is to be read to the jury, and the question, like other matters of fact, is for their decision. (2 Phillips' Ev., C. H. & E.'s Notes, 503, Note.) And when a *prima facie* case of execution has once been made, the Court is not to allow the other party to adduce counter proof before the instrument is read, and thus assume to take the question from the jury. (Id.) Testing the present case by these rules, it is manifest that the Court erred—first, in permitting the plaintiff to introduce counter proof after the defendants had made a *prima facie* case of execution; second, in deciding that the memorandum formed no part of the contract between the parties after such *prima facie* proof had been made, thus taking the question from the jury; but these errors were corrected by afterwards permitting the instrument to be read, and leaving the question of its authenticity to the jury. So the action of the Court, taken as a whole, forms no ground for reversing the case.

The next question is, whether parol evidence was admissible to show that the memorandum formed part of the contract or agreement of the parties. As a general rule, parol evidence is not admissible when it relates to the *construction* to be given to a written contract; but such evidence is admissible when it relates to the execution or authenticity of the instrument, or to its delivery, or whether the delivery was absolute or conditional. In such cases the execution and acts of delivery being mostly a matter *in pais*, oral declarations of intentions connected with the execution and delivery may properly come in as part of the *res gestæ*. (2 Phillips' Ev., C. H. & E.'s Notes, 754.) On this point, the case of *Heywood* v. *Perrin* (10 Pick. 228) is very similar to the present. In that case a promissory note, payable on demand, had been signed by the defendant; but before its delivery the defendant objected to it

because it was payable on demand, and thereupon the following memorandum was written at the bottom of the note, below the signature of the defendant and the attestation of a subscribing witness, to wit: "One-half to be paid in twelve months, the balance in twenty-four months;" and it was then delivered to the payee. The Court held, that it was competent for either party to prove by parol evidence the time when, the person by whom, and the circumstances under which the memorandum was affixed to the note. But evidence of the declarations of the promisee as to his intention in taking the contract in that form, and as to his understanding of the meaning and construction of its terms, could have no effect in giving a construction to the instrument, as the Court was bound to construe it according to its terms, and could not be aided by the declarations of the parties made at the time. The Court, therefore, held that the words "payable on demand," in the body of the note, were qualified and controlled by the memorandum at the bottom.

The evidence upon this point, in the present case, was somewhat conflicting, and it was a proper matter for the jury to determine after hearing all the testimony; and as their conclusion is sustained by the Court below in refusing a new trial, we should not be justified in disturbing the verdict on the ground that it is not sustained by the evidence. It seems that some of the testimony on this point was given to the Court in the absence of the jury, and was not restated by the witnesses to the jury. Is was the fault of the plaintiff that the evidence was not restated to the jury after the Court decided to submit the whole matter to the jury. If he had reoffered such testimony, and the Court had excluded it, he would then have had some ground on which to predicate error.

The contract set up by the defendants contains this clause: "The parties of the first part also agree to finish the whole work on or before the fifteenth of November, 1859; and they expressly agree that if the tunnel, ditch, and flume are not finished within ten days of the time specified, they will forfeit the contract, as also all moneys due on the same." The work was not finished until long after the time specified; and the defendants set up as reasons for the delay, that the tunnel to be constructed was much longer than the company represented, and the rock in the tunnel was found to be

much harder than was anticipated, and harder than was represented by the company. The Court instructed the jury that the time was not of the essence of the contract, and a failure to complete within the time would not be a forfeiture of the amount due under the contract for labor and materials that were of actual value to the company; and if the parties were mutually mistaken in regard to the length of the tunnel, and the time fixed was based on such mistake, the stipulation as to time would be void, and the defendants would have a reasonable time in which to complete the work. Or if the company represented the tunnel to be shorter than it really was, and if the defendants believed such representation to be true, and acted thereon in fixing the time for completion, then the clause as to time and forfeiture would be void, and defendants would be entitled to a reasonable time. To these instructions the plaintiff excepted, and asked the Court to instruct them " that if the defendants had not completed their work within ten days after the fifteenth of November, they could not claim any lien or other advantages under the contract, but could at most only recover the reasonable value of their work, without lien or other advantages from the contract," which the Court refused, and this is assigned as error.

Where an act is done or a contract is made under an injurious mistake or ignorance of a material fact, it is voidable; and this rule is not limited to cases where there has been a fraudulent concealment and suppression of facts, but extends also to cases of innocent misapprehension and mistake. (Story on Cont. Sec. 409; 1 Story's Eq. Sec. 140.) It is not necessary, in a case of this kind, where the mistake or misrepresentation only affects one out of many stipulations in a contract, to treat the whole agreement as void, but only that portion to which the mistake or misrepresentation properly applies. The rule in equity is, that if there has been any undue concealment or misrepresentation, the injured party will be placed in the same situation, and the other party will be compelled to do the same acts, as if all had been transacted with the utmost good faith. (1 Story's Eq. Sec. 439.) In this case, the evidence and instructions given on this point are intended merely to prevent a forfeiture claimed under a clause inserted under a mistake as to the facts, and a misrepresentation by the company's

23

agents of those facts, most material to this part of the contract. The fact that this evidence was used to defeat the claim of forfeiture will not deprive the defendants of the other valid clauses in the agreement not affected thereby, and compel them to rely upon a mere implied contract to pay the value of the work done. In this view of the case, the Court did not err in giving the instructions objected to, or in refusing the instructions asked by the defendants.

The contract in controversy, in describing the parties, reads as follows: "This agreement, entered into this 29th day of May, 1859, between Robert McGregor and James Newton, parties of the first part, and David Tyre, C. A. Simmons, and Thomas Cairns, Directors of the Table Mountain Ditch Company, parties of the second part, witnesseth," etc. The agreement refers to the ditch, tunnels, and flumes "of the Table Mountain Ditch Company," as the subject matter of the contract. It is signed by Tyre, Simmons, and Cairns, without any official designation, or statement of the capacity in which they sign, attached thereto; but the memorandum commences thus: "The Table Mountain Ditch Company hereby agrees," etc. The contract seems to have been filed and kept with other papers of the company, by its Secretary. The plaintiff objected to the admission of the contract in evidence, on the ground that it was not the contract of the company, but only of Tyre, Simmons, and Cairns, who signed it. The defendants aver, in their answer, that the contract was entered into "with the Table Mountain Ditch Company." The company, who were made parties to the suit by the answer, which was in the nature of a cross complaint, in their answer merely deny that "it ever entered into any such contract as is set forth in the cross bill," etc. The plaintiffs, in their replication to the answer, say that "it is not true, as charged in said answer, that the Table Mountain Ditch Company agreed with the defendants to give to them," etc. The answer and replication are clearly evasive, and do not specifically deny that the company were the real parties to the contract, and bound thereby. If it had been the intention to raise that distinct issue, it should have been done by more direct specific denials or averments. As was said in *Rowe* v. *The Table Mountain Water Com-*

*pany* (10 Cal. 444), where a similar point was raised: " We cannot see why the corporation, if it chose to do so, could not as well bind itself in this form as in any other." The averment in the complaint is admitted by the failure to specifically deny it. There is sufficient in the contract itself to show that the Company were the parties really interested; so that it is not impossible, in fact, for the contract thus executed to be the contract of the corporation, in which case the objection fails. It seems, too, that the corporation acted under it, by making payments thereon, and putting the defendants in possession of the ditch; and they receive the benefit of the defendants' work thereon. These are strong circumstances to show the liability of the company. (Angell & Ames on Corp. Sec. 296.) There was therefore no error in this action of the Court. We have thus examined all the material points raised by the appellant, and find no just ground for disturbing the verdict and judgment.

The judgment is therefore affirmed.