[No. 20979.    Department One.—May 3, 1894.]

THE PEOPLE, RESPONDENT, v. GEORGE GREEN-ING, APPELLANT.

CRIMINAL LAW—ARSON—DESCRIPTION OF PARTNERSHIP PROPERTY—EVIDENCE—IDENTIFICATION.—Where the property which a defendant accused of arson is charged with having burned is described in the information as a building belonging to a partnership firm named in the information, and the proof shows that the building was used by the partnership in their business at the time it was burned, and that the property had been bought by one of the partners some years previously, and that he had afterwards conveyed an undivided one-half of it to his copartner, such proof is sufficient to identify the property destroyed with that which was laid in the information, and it is immaterial for the purposes of the trial whether the building was held by the partners as cotenants or as joint tenants.

ID.—EVIDENCE—DECLARATIONS OF DEFENDANT—TESTIMONY OF STENOGRAPHER—READING NOTES TO JURY.—Where a stenographer has testified to certain statements made by the defendant in the jail after his

arrest, refreshing his memory from shorthand notes, and testifying that he had written out longhand notes, which was a true and correct statement of what the defendant had said, it will not be held error for the court to permit the district attorney in his argument to the jury to read from the statement written out in longhand, although such statement had not been formerly introduced in evidence, if the record does not show what was read to the jury, or that the longhand statement was in any manner different from the testimony given by the stenographer.

ID.—ARRANGEMENT BETWEEN OFFICERS AND WITNESS—CROSS-EXAMINATION—HARMLESS ERROR.—Where the evidence is undisputed that the defendant admitted that he set fire to the building, an error in refusing to permit him to cross-examine witnesses for the prosecution to show certain conversations between them and the arresting officers prior to the burning of the building to the effect that the officers had been informed that the fire was to occur, and that in consequence of such information they were near the place of the fire for the purpose of arresting such defendant, does not affect any substantial rights of the defendant.

ID.—KNOWLEDGE OF OFFICERS IMMATERIAL.—What took place between the officers and these witnesses could neither bind nor exculpate the defendant, and the fact that the defendant's intention to commit the offense was known to the officers beforehand would not palliate his crime.

APPEAL from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

*Barham & Bolton*, for Appellant.

*Attorney General W. H. H. Hart*, and *Deputy Attorney General William H. Layson*, for Respondent.

HARRISON, J.—The defendant was convicted of arson in the second degree; and has appealed from the judgment.

1. The property which he is charged with having burned is described in the information as "a building belonging to the firm of Noonan and Towey, a partnership composed of P. H. Noonan and Peter Towey." At the trial it was shown that Noonan and Towey were in partnership, engaged in business as butchers, and that the building was used by them in their business at the time it was burned; that the property had been bought by Noonan some years previously, and that he had afterwards conveyed an undivided half of it to Towey.

CII. CAL.—25

This was sufficient to identify the property destroyed
with that which was laid in the information. (*People* v.
*Shainwold*, 51 Cal. 468.)    It was immaterial for the pur-
poses of the trial whether the building was held by
Noonan and Towey as cotenants or as joint tenants.
Real property may be owned by a partnership (Civ.
Code, sec. 684), and the conveyance to the individual
partners in which they are styled as composing a firm
will be operative to vest in them the title according to
the terms of the deed. (*McCauley* v. *Fulton*, 44 Cal.
355.)

2. While the defendant was in the county jail after
his arrest, he made certain statements to the district at-
torney and sheriff, which were taken down in shorthand
by a stenographer, and afterwards written out in long-
hand.   The stenographer was called as a witness at the
trial, and in his testimony gave these statements at length,
refreshing his memory from his shorthand notes.   He
also had the longhand notes that he had written out,
and stated that they were a true and correct statement
of what the defendant had said.   During the argument
to the jury the district attorney proceeded to read to the
jury from this statement written out in longhand, to
which the defendant's counsel objected upon the ground
that the paper had never been introduced in evidence,
whereupon the court said: "It appearing to the court
that the paper which the district attorney holds in his
hands is the paper the reporter of this court has testi-
fied to as being a copy of the statements made by the
defendant, as testified to by him, although the paper or
copy is not in evidence, the objection is overruled."   To
this the defendant excepted.   The record does not show
what was read to the jury, or that the longhand state-
ment was in any respect different from the testimony
given by the stenographer, and, as he had testified that
it was "a true and correct statement" of what the de-
fendant had said, it does not appear that any error was
committed.

3. The defendant visited the house of one Staley dur-

ing the evening prior to the fire, and while there, after drinking a quantity of wine, proposed to Staley to burn the barn, to which Staley apparently assented, and accompanied him for that purpose along the railroad track to a place opposite the barn, when the defendant got over the fence, and set the building on fire. After this was done Staley fired a pistol, which was a concerted signal between him and the officers, upon which they were to arrest the defendant. At the trial the defendant sought in cross-examination of Staley and other witnesses for the prosecution to show certain conversations between them and the officers prior to the burning of the building to the effect that the officers had been informed that the fire was to occur, and that, in consequence of such information, they were near the place of the fire for the purpose of arresting the defendant. What took place between the officers and these witnesses could neither bind nor exculpate the defendant, and the fact that the defendant's intention to commit the offense was known to the officers beforehand would not palliate his crime. Even if it be conceded that the court committed a technical error in refusing to permit this cross-examination, we think that, in view of the undisputed evidence that the defendant admitted that he set fire to the building, this error did not affect any of his substantial rights. (Pen. Code, sec. 1258.)

The instructions to the jury were fully as favorable to the defendant as he could ask, and the exceptions thereto do not deserve further consideration.

The judgment is affirmed.

GAROUTTE, J., DE HAVEN, J., FITZGERALD, J., and McFARLAND, J., concurred.

BEATTY, C. J., dissenting.—I dissent. The superior court erred, in my opinion, in preventing a full and free cross-examination of the witnesses for the people. Aside from certain admissions of the defendant testified to by some of the witnesses, the evidence was quite

as consistent with the theory that the fire was started by the principal witness for the prosecution, who, by his own admission, was "in the employ of the city to catch a fellow setting fire to a barn," as with the theory that the defendant started it. If the prosecution had deemed the evidence of defendant's admission sufficient in itself to insure his conviction, there was no occasion to put in other evidence. But the other evidence was put in, and, presumably, because it was deemed necessary to secure a verdict. This being so, the defendant had a right to cross-examine these witnesses as fully as if their evidence stood alone. He had a right to show upon cross-examination all the facts and circumstances of the preconcerted arrangement between the officers and the witness Staley, and to argue from such circumstances that there was a motive and an opportunity for Staley himself to commit the crime which was charged upon him; and the force of this observation is not diminished by the fact that Staley admitted that he had formerly been convicted of arson, and served a term in the state prison. When such a man is hired to detect some one setting fire to a barn, and when, as in this case, he invites another to his house and there plies him with intoxicating liquors until his mind is seriously clouded, and then accompanies him to the building which is burned, and immediately after the fire is started fires a pistol—the prearranged signal to the officers to rush in and make the arrest—when such, I say, is the testimony in chief, the utmost latitude of cross-examination should be allowed to the accused. If the testimony is true, such cross-examination can do no harm; if it is false, there is no other means of showing its falsity, and without it an innocent man may be made to suffer the penalty of another's crime.

I think the defendant is entitled to a new trial.