[Civ. No. 106.   First Appellate District.—January 23, 1906.]

## JOSEPH CASTOR, Appellant, v. JOE BERNSTEIN, Respondent.

EVIDENCE—ASSIGNMENT OF CONTRACT TO PLAINTIFF—PRIOR RELEASE BY ASSIGNOR—PROOF OF EXECUTION—COMPARISON OF HANDWRITING BY JURY.—After evidence by plaintiff of an assignment to him of the contract sued upon, the court, under the common-law rule, and under section 1944 of the Code of Civil Procedure, properly admitted in evidence a prior release by plaintiff's assignor to defendant, for comparison of handwriting of the signature to the release with the signature to the assignment by the jury, without any other proof of the execution of the release.   [Per Harrison, P. J., and Hall, J. Cooper, J., dissenting.]

ID.—"MEANS SANCTIONED BY LAW"—LEGAL EVIDENCE.—Under the definition of evidence in section 1823 of the Code of Civil Procedure, a comparison made by the jury between the two signatures was a "means sanctioned by law for ascertaining the truth" respecting the question of fact presented for their determination—the genuine-

ness of the signature to the release. Such comparison by the jury is in itself legal evidence upon which alone they may render a verdict.

Id.—Genuineness of Signature to Release—Question of Fact for Jury.—Whether the signature to the release was genuine or not was a question of fact to be determined by the jury and not by the judge.

Id.—Testimony of Experts—Province of Jury.—The testimony of experts is not essential, and when offered cannot prevent the jury from comparing the documents with a view to question of genuineness, and it may wholly disregard their testimony and exercise its own judgment. The comparison may be made by the jury with or without the aid of experts.

Id.—Construction of Code—Subscribing Witness.—It was not necessary for defendant to prove the signature to the release by the subscribing witness, or to account for his absence, before resorting to the mode adopted. The code makes no distinction in rank between the various modes in which a writing may be proved; and the provision of section 1944, authorizing proof of handwriting by comparison by the jury, is of equal force with the provision in section 1940, authorizing it to be made by a subscribing witness.

Id.—Effect of Release—Presumption of Consideration—Burden of Proof.—The release executed by plaintiff's assignor for the benefit of the defendant is available against the plaintiff as a subsequent assignee of the contract sued upon. The consideration of the written release is presumed; and the burden was upon the plaintiff to prove the want of consideration.

Id.—Conflicting Instruments—New Trial—Duty of Court.—The verdict being based upon a comparison between the assignment and the release, the conflict between them as to the genuineness of the release is in legal effect the same as in case of conflicting testimony; and if the court, having the same opportunity as the jury to compare the signature, was of opinion that the verdict was not justified by the evidence, it was its duty to set the verdict aside and grant a new trial; and its action in so doing was a matter peculiarly within its province, and is not subject to review.

APPEAL from an order of the Superior Court of the City and County of San Francisco, granting a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Otto Irving Wise, and Crittenden Thornton, for Appellant.

George D. Collins, for Respondent.

HARRISON, P. J.—The plaintiff seeks by this action to recover damages from the defendant for the breach of a contract entered into between him and the plaintiff's assignor. In his answer the defendant sets up several defenses, one of which is that prior to the assignment to the plaintiff his assignor, by an instrument executed by him, released the defendant from all claims arising out of the contract alleged in the complaint. At the trial the plaintiff offered in evidence the assignment to him and rested. The defendant then offered in evidence the written instrument of release alleged in his answer. The plaintiff objected to its introduction, upon the ground that there had been no proof of its execution, or of the signature of the maker thereof, or of the subscribing witness. The defendant then stating that he proposed to submit the paper to the jury for comparison with the signature to the assignment to the plaintiff already in evidence, as proof of its execution, the plaintiff made the further objection that proof by comparison of writings could not be made entirely by the jury; that the genuineness of the disputed writing must be first shown by a witness. The court overruled these objections, and admitted the paper in evidence, saying that he would let the jury look at it and determine from an inspection whether, in their opinion, the signature was genuine. To this ruling the plaintiff excepted. The defendant then rested, and the court instructed the jury, in substance, that they should find for the plaintiff or for the defendant according as they should find whether the signature to the writing offered by the defendant was genuine or not. The jury rendered a verdict for the plaintiff. Upon motion of the defendant the court granted a new trial, and from this order the present appeal has been taken.

1. The court did not err in admitting in evidence, without any previous testimony of experts thereon, the purported release, and allowing the jury to determine its genuineness by a comparison of the signature thereon with the signature upon the assignment to the plaintiff. To the general rule of the common law that the genuineness of disputed handwriting could not be determined by the court or jury by comparing it with other handwriting of the party, there was one well-settled exception, viz., that if a paper admitted to be in the

2 Cal. App.—45

handwriting of the party, or to have been subscribed by him, is in evidence for some other purpose in the cause, the signature or paper in question may be compared with it by the jury. (*Moore* v. *United States,* 91 U. S. 279.) The restriction which the rules at common law placed upon the mode of proving the genuineness of handwriting has in modern days been greatly removed, and in this state the legislature has declared, in section 1944 of the Code of Civil Procedure, that "evidence respecting the handwriting may also be given by a comparison made by the witness or the jury with writings admitted or treated as genuine by the party against whom the evidence is offered or proved to be genuine to the satisfaction of the judge." Similar statutory provisions have been enacted in other states in this country, and also in England, and, being remedial in their nature, are to be liberally construed. In *People* v. *Molineux,* 168 N. Y. 264, [61 N. E. 286], the court entered into an elaborate discussion of the law respecting the proof of handwriting by comparison and other modes (pages 318-330, 168 N. Y., [pages 304-308, 61 N. E.], and held that the object of these statutes is to enlarge, and not to narrow, the rules of the common law. The defendant was not seeking to establish the genuineness of the release by a comparison with exemplars which were irrelevant to the issue before the court, and authorities involving the common-law rule in such cases are inapplicable; but he was availing himself of the means authorized by section 1944 for making proof of its genuineness. The exemplar with which the jury were directed to make the comparison was already before them and admitted by the plaintiff to be genuine, and, under the definition of evidence in section 1823 of the Code of Civil Procedure, a comparison made by the jury between the two signatures was a "means sanctioned by law for ascertaining the truth" respecting the question of fact presented for their determination—the genuineness of the signature to the release. Such comparison by the jury is in itself legal evidence, upon which alone they may render a verdict. (*Williams* v. *Drexel,* 14 Md. 566.)

Whether the signature to the release was genuine or not was a question of fact to be determined by the jury, and not by the judge; nor could the judge, by refusing to allow the writing to be submitted to the jury, preclude the defendant

from having the jury determine that question of fact. If the defendant had so desired, he could have offered the testimony of experts for the purpose of adding weight to his claim that it was genuine; but he was not required to do so. It is not to be assumed that he would submit the writing to them for comparison, unless there was, at least, a colorable resemblance to the exemplar already in evidence; but, if he was so disposed, he was entitled to have the jury pass upon the question of its genuineness without the aid of any corroborative testimony. The rule is of long standing that a jury is not required to follow the opinion of experts, but may disregard them entirely and exercise its own judgment in matters of this nature, and by section 612 of the Code of Civil Procedure they may, upon retiring for deliberation, take with them all papers that have been received in evidence in the case, except depositions. But while they will give proper weight to the testimony of experts, as was said by Lord Denman in *Doe* v. *Newton*, 5 Ad. & E. 514, "no human power can prevent the jury from comparing the documents with a view to the question of genuineness," and they will determine the question according to their own judgment. (See, also, *People* v. *Storke*, 128 Cal. 486, [60 Pac. 1090].) The provision of section 1944, that "Evidence respecting the handwriting may also be given by a comparison made by the witness or the jury," clearly indicates that the jury may make the comparison without any previous testimony of a witness. Mr. Greenleaf says (section 578) that, when other writings admitted to be genuine are already in the case, the comparison may be made by the jury "with or without the aid of experts." The same rule is given in Wharton on Evidence, sec. 713; 1 Rice on Evidence, 344; Taylor on Evidence, 9th ed., sec. 870; *Williams* v. *Drexel*, 14 Md. 566; *Rogers* v. *Tyley*, 144 Ill. 652, [32 N. E. 393]; *People* v. *Molineux*, 168 N. Y. 264, 330, [61 N. E. 286, 308]; *Cobbett* v. *Kilminster*, 4 Fost. & F. 490.

2. It was not necessary for the defendant to prove the genuineness of the signature to the release by the testimony of the subscribing witness, or to account for his absence, before resorting to the mode adopted by him. The code makes no distinction in rank between the various modes in which a writing may be proved, and the provision of section 1944, authorizing the proof of handwriting by a comparison made by the

jury is of equal force with the provisions in section 1940, authorizing it to be made by a subscribing witness. *Landers* v. *Bolton*, 26 Cal. 406, cited by the appellant, was tried before there was any statute in this state on the subject, and the opinion therein, while referring to the English rule then prevailing, questions its correctness.

3. The release executed by the plaintiff's assignor is by its terms executed for the benefit of the defendant, and is available for him against the plaintiff's claim herein. (Civ. Code, sec. 1559.) The instrument itself, being in writing, was presumptive of a consideration, and if the plaintiff would avoid it for want of consideration, the burden was upon him to make such proof. (Civ. Code, sec. 1615.)

4. The aforesaid assignment and release constituted the only evidence submitted to the jury. Their verdict was the result of a comparison made by them of the signatures to the respective instruments. These writings were separate pieces of evidence upon the issue presented by the defendant, and the conflict between them as to the genuineness of the signature of the release was, in legal effect, the same as would have been a conflict between testimony of witnesses in reference thereto. If the court was of the opinion that in its determination of this conflict the jury did not give sufficient consideration to the signature upon the release, and that its verdict—which, in effect, found that this signature was a forgery—was not justified by the evidence, it was its duty to set the verdict aside and grant a new trial. (*Bjorman* v. *Ft. Bragg Redwood Co.*, 92 Cal. 500, [28 Pac. 591]; *Domico* v. *Casassa*, 101 Cal. 411, [35 Pac. 1024]; *Mills* v. *Oregon Ry. Co.*, 102 Cal. 387, 36 Pac. 772; *Newman* v. *Overland P. R. Co.*, 132 Cal. 73, [64 Pac. 110].) The court had the same opportunity as the jury to compare the signatures, and to determine whether the one in question was genuine or false; and its determination that the jury had erred in its conclusion, and that its verdict was contrary to the evidence before it, was a matter peculiarly within its province, and is not subject to review.

The order is affirmed.

Hall, J., concurred.

COOPER, J., Concurring.—The instrument claimed to be a release was admitted in evidence by the trial court, and was thus a part of the record upon which the jury rendered its verdict. The court, therefore, on the motion for a new trial, had the right to review the evidence, and to set aside the verdict of the jury if it believed such verdict was not supported thereby. The court did review the evidence; and, believing that the verdict was contrary thereto, granted the new trial. There was no abuse of discretion in making the order. Conceding that the court erroneously admitted the release in evidence, that would not change the result, although it would have been ground of complaint if the verdict had been against plaintiff. But the plaintiff cannot, on an appeal from the order granting a new trial, claim that because of an erroneous ruling there was no evidence at all upon which a verdict or judgment could have been rendered for the defendant. If the objection of the plaintiff to the release had been sustained, then the defendant might have proved the execution of the release by other evidence. An order granting a new trial must be affirmed, unless there is a clear abuse of discretion. (*Hausmann* v. *Sutter St. Ry. Co.*, 139 Cal. 174, [72 Pac. 905].) I do not, however, agree with what is said by the presiding justice as to the admission of the release without any preliminary proof.

The release offered and received in evidence is as follows:

"New York, March 2nd, 1900.

"Agreement entered into this second day of March, 1900, between John T. Dougherty, of the first part, and Joseph E. Howard of the second part. That the party of the first part agrees to release Joe Bernstein, so that this man, namely, Joe Bernstein, can go with the theatrical production known as 'The New York Girl,' and that he signs away all claims against said Joe Bernstein.

(Signed) "JOHN T. DOUGHERTY.

"Witness: JULIUS LIBERMAN."

This is a writing which defendant desired to prove and introduce in evidence.

It is provided (Code Civ. Proc., sec. 1940) that a writing may be proved: "(1) by anyone who saw the writing executed; or (2) by evidence of the genuineness of the hand-

writing of the maker; or (3) by a subscribing witness.'' It is further provided (Code Civ. Proc., sec. 1942) that evidence may be given that the party against whom the writing is offered has admitted its execution; or (section 1945), where it is more than thirty years old, comparisons may be made with writings purporting to be genuine and generally respected and acted upon as such by persons having an interest in knowing the fact; or (section 1942) when it is produced from the custody of the adverse party and has been acted upon by him as genuine; or (section 1943) the handwriting of a person may be proved by one who believes it to be his, and who has seen him write, or has seen writings purporting to be his upon which he has acted or been charged, and who has thus acquired a knowledge of his handwriting; or (section 1948) it may be acknowledged or proved and certified in the manner provided for the acknowledgment or proof of conveyances of real property, and the certificate of acknowledgment or proof is *prima facie* evidence of the execution of the writing.

In this case the paper purporting to be a release was admitted in evidence without any attempt to prove it in any of the methods referred to. It was contended, and the court held, that it might be admitted in evidence and the jury might pass upon it by comparison with a paper already in evidence as part of plaintiff's case. I do not think such is the correct construction of section 1944, cited in the opinion of the presiding justice. That section provides that evidence may be given respecting the handwriting by a comparison, made by the witness or the jury, with writings admitted to be genuine by the party against whom the evidence is offered, or proved to be genuine to the satisfaction of the judge. The section does not provide that the instrument may be proven in this way. It simply says that evidence respecting the handwriting may be given by comparison. Such comparison, evidently, may be made by a witness, either before or after the instrument is received in evidence. The witness by comparison may give evidence respecting the handwriting. The statements made by the witness after such comparison as to the handwriting are evidence which the jury may consider. The jury may also, after the instrument has been *prima facie* in some legal way proven and admitted in evidence, look at the handwriting

and compare it, and such comparison is evidence. Evidence is the legal means, sanctioned by law, for proving or disproving some material fact in issue. When the handwriting is in issue, the jurors may, by comparison with the documents·before them, and by the use of their eyes, look at the characters made on the two instruments, and in this way receive evidence by comparison. But this does not, in my opinion, mean that the jury are entitled to have admitted in evidence every paper offered without any proof whatever, so that they may compare it. The question as to whether or not a paper or document is admissible in evidence is for the court, and not for the jury. The court must surely have some evidence as to its execution or the signature thereto before it can admit it. The section provides that evidence may be given by comparison made by the witness. If this means that the document may be admitted in evidence without any other proof, it would be admissible for the witness as well as for the jury. This would lead to endless documents being introduced in evidence without any restraint by the court. A plaintiff might bring an action upon a written instrument the genuineness of which is in issue. The defendant answers and signs and verifies his answer. Such answer is a writing admitted and treated as genuine by the defendant. The plaintiff, under the ruling here, could introduce the instrument without a word of preliminary proof, relying upon the chances that the jury might say it was genuine by comparing it with the answer. In this case the error in the ruling is manifest by the result. The release was admitted, and the jury were, in effect, to say by comparison whether or not it was admissible, and when they retired to deliberate they found that the signature was not genuine, and hence that it was not admissible. The trial court by an inspection thinks it was genuine, and made an order granting a new trial. Hence a new trial is granted because an instrument is thought by the trial judge to be genuine without a word of evidence of any kind except by comparison, and such comparison was for the jury, and it found that the instrument was not genuine. The learned judge was not satisfied with the ruling, for in the order granting a new trial he said: "I think that in the interest of justice a new trial should be granted, in order to enable the defendant to sustain the so-called release, if he can, by the testimony of Dougherty,

or himself, or of the person whose name is subscribed as witness thereto. There should be no serious difficulty in procuring the testimony of at least one of these parties.'' The code does not provide that the evidence by comparison may be made by the judge. I have carefully examined all the cases cited by the presiding justice, and I do not find one that is directly in point. They use general language to the effect that, when other writings admitted to be genuine are already in the case, the comparison may be made by the jury, with or without the aid of experts; but that means that the evidence by comparison may be taken, and not that the instrument may be proved in this way. It is only evidence or a means to be used by the jury in arriving at the ultimate fact. The rule is thus given in Phillips on Evidence (C. H. & E. notes), volume 2, page 616: ''Within a recent period a rule has been established which amounts to a considerable relaxation of the strictness of the law in regard to the direct comparison of handwriting. Upon a question respecting the identity of handwriting, the jury may be allowed to take other papers which have been proved to be the writing of the party whose handwriting is disputed, provided they are part of the proofs in the cause, and may compare them with the disputed writing for the purpose of forming their opinion whether the disputed writing is genuine.'' The author says the comparison may be made upon a question respecting the identity of handwriting, and that is what Greenleaf means when he says the ''comparison may be made with or without the aid of experts,'' and is what the code means when it says evidence respecting the handwriting may be given by a comparison. It does not seem plausible that the section means that the document may be proven by a comparison made by the jury. Such is not one of the ways of proving a written instrument.

In *Verzan* v. *McGregor*, 23 Cal. 343, it is said: ''And the rule is that, if there be no evidence of authenticity, the instrument cannot be read to the jury; but if there be any fact or circumstances tending to prove the authenticity from which it might be presumed, then the instrument is to be read to the jury, and the question, like other matters of fact, is for their decision.'' In *Adams* v. *Field*, 21 Vt. 264, it is said: ''In England it was long held that a comparison of handwriting was not admissible, but I think that rule has been modified by

modern decisions, and at the present day it would seem their
courts admit in evidence comparison of hands, but confine it
to documents which are proved to be genuine, and which are
in evidence on the trial of the cause for other purposes." In
*Allport* v. *Meek*, 4 Car. & P. 509, it was sought to prove a bill
of exchange to the jury by comparison with the written ac-
ceptance which the defendant acknowledged to be his. Tin-
dall, C. J., said: "I think you must call some witness to lay
some evidence before the jury on which they may decide."
In *Doe ex dem. Henderson* v. *Roe and Hackney et al.*, 16 Ga.
524, the court said: "The court or jury may compare two
documents together when properly in evidence, and from that
comparison form a judgment upon the genuineness of the
handwriting or the identity of the writer." The case of
*Myers* v. *Toscan*, 3 N. H. 47, is very much like the case at bar
as to the facts. The defendant relied upon a sale of the prop-
erty (for which suit had been brought) to him by the plain-
tiff, and produced a paper purporting to be signed by the
plaintiff, acknowledging the receipt of payment for the arti-
cles. The trial court permitted the jury to compare the sig-
nature to the receipt with another paper containing the
genuine signature of the plaintiff, and instructed them that
they might compare the signatures, and if satisfied from the
comparison that the receipt was genuine, they must return a
verdict for the defendant. On such instruction the jury re-
turned a verdict for the defendant, and the plaintiff made a
motion for a new trial, upon the ground that the jury had
been misdirected. The opinion prepared by the chief justice
states the rule thus: "We take it to be a well-settled principle
of law that it cannot be left to a jury to determine whether a
signature is genuine or not merely by comparing it with other
signatures proved to be genuine. . . . But where witnesses
acquainted with the handwriting in question have been called
and examined, other signatures, proved to be genuine, may be
submitted to the jury, to corroborate or weaken the testimony
of such witnesses. . . . As it was submitted to the jury in
this case to decide by a mere comparison of handwriting, we
entertain no doubt that there must be a new trial granted."
In *Graham* v. *Nesmith*, 24 S. C. 289, the witness Cooper testi-
fied that, upon examining and comparing a statement and the
signature thereto "Sarah Nesmith," and comparing it with

her signature to the original agreement and with acknowledged signatures of hers, he was "satisfied that this instrument is genuine, and that the signature is hers." Sarah Nesmith, although a witness, refused to say whether the signature was hers or not. The court said: "There was some testimony by the plaintiff, Tucker, tending to show, although possibly not sufficient to show, that the paper in question was signed by Mrs. Nesmith, and that makes just such a case as lets in proof by comparison of handwriting."

I am confirmed in my views as to the meaning of the section, by section 1943, which precedes it. It is there said: "The handwriting of a person may be proved by anyone who believes it to be his, or who has seen him write, or has seen writings purporting to be his upon which he has acted or been charged, and who has thus acquired a knowledge of his handwriting." When section 1944 speaks of evidence respecting "the handwriting," it means, in my opinion, that the jury may compare the writing in evidence with writings admitted or treated as genuine by the party against whom the evidence is offered. The case of *Williams* v. *Drexel*, 14 Md. 566, cited by the presiding justice, presents an entirely different case from the case at bar. The court held in that case that it was not error for the court to refuse to instruct "the jury to find a verdict for defendant because there was no evidence of the indorsement of the bill to the payee." The court said: "The bill of exceptions states that the plaintiff offered in evidence to the jury the following paper writing, purporting to be a bill of exchange, acceptance, and protest, which are there set forth, no objection to their admissibility appearing to have been made. The record, as amended, shows the bill of exchange to have the name of the drawer, the name of the payee, and that of the payee as indorser, all written in the same name, appearing to be the name of the same person, and all apparently in the same handwriting. The acceptance is fully proved, which admits the signature of the drawer. It is also shown that, whilst the indorsement on the bill was in blank, the defendant acknowledged the acceptance to be hers. Where in addition to these circumstances we have before us the whole conversation between the defendant and Mr. Marshall, as detailed by him, we are not prepared to say there was no evidence to prove the indorsement of the bill to the payee." It

will readily be seen that in that case the bill of exchange was in evidence with the name of the payee, the name of the drawee, and the payee as indorser, all written upon it. No objection had been made as to the indorsement. As no such objection had been made, and the indorsement was in evidence, the jury then had the right to compare the signatures.

I therefore dissent from what is said by the presiding justice as to the admission in evidence of the release.

A petition for a rehearing of this cause was denied by the district court of appeal on February 21, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 26, 1906.