[Crim. No. 985.   Department One.—September 8, 1903.]

# THE PEOPLE, Respondent, v. FRED WALKER, Appellant.

CRIMINAL LAW—UTTERANCE OF FORGED CHECK—SUFFICIENCY OF EVI-
DENCE.—Although it will not be inferred that a person intends to
present a forged check in the absence of evidence to that effect,
yet the tender of a check purporting to be signed by a certain
person is in itself a representation that the check is genuine; and
where a representation was made that the son of the purported
maker had signed his father's name thereto in his father's ab-
sence and the evidence shows that the check was in fact forged,
a verdict to the effect that the defendant feloniously and falsely
uttered and passed the forged check as genuine, is supported by
the evidence.

ID.—EVIDENCE—DECLARATIONS OF DEFENDANT.—The declarations of the
defendant that he had been working for the person named as maker
of the check were competent evidence against him.

ID.—TESTIMONY OF DEFENDANT—IMPEACHMENT—CONTRADICTORY STATE-
MENTS.—Where the defendant testified in his own behalf that he
bought the check from a third person, believing it to be genuine,
he may be asked on cross-examination if he had not made contra-
dictory statements, to lay the foundation for impeachment by
proof that such statements were made.

ID.—VOLUNTARY STATEMENTS—CONFESSION.—Assuming, without decid-
ing, that the contradictory statements proved were in the nature
of a confession made to officers while under arrest, that fact does
not render them inadmissible, where the proof shows affirmatively
that the statements were voluntary, and that no threats were made
or inducements held out to procure them.

ID.—IMMATERIAL  REFERENCE  TO  ANOTHER  CHECK.—An immaterial
reference to another check in the question asked of the defend-
ant on cross-examination, to lay a foundation for impeachment, which
check was not indicated to have been forged or uttered, could not
have harmed the defendant.

ID.—INSTRUCTION—REPRESENTATION OF GENUINENESS OF SIGNATURE—IM-
MATERIAL DEFECT.—An instruction that in order to convict, the jury
must believe that in passing the check, the defendant represented
either that it was signed by the maker or for him by his son
named, is correct with the possible exception that it was im-
properly limited to such son, there being some evidence that there
was another son.   But such defect being more favorable to the
defendant than otherwise, must be regarded upon appeal as im-
material.

ID.—REFUSAL OF REQUEST—MISLEADING INSTRUCTION—SIGNATURE OF
MAKER.—A requested instruction that if the defendant when

passing the check told the transferee that the assumed maker did not sign the check, they must find the maker not guilty, was properly refused as misleading, in view of the evidence that the defendant then stated that the maker's name had been signed by his son. The check would have been as valid and binding if signed by the son with the maker's authority, as if personally signed by the maker.

APPEAL from a judgment of the Superior Court of Tehama County and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

H. P. Andrews, and N. A. Gernon, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

GRAY, C.—The defendant was convicted of forgery, and appeals from the judgment and from an order denying him a new trial.

The information charges that defendant "feloniously and falsely did utter and pass to one J. F. Shubert a certain false, forged, and counterfeit check, as the true and genuine check of one Hugh Mooney for the payment of $24.50, which aforesaid false, forged, and counterfeit check is in words and figures following, to wit:—

"Red Bluff, Cal., October 4th, 1902. Bank of Tehama County, pay to Charles Gorman, or bearer, $24.50 (twenty-four and 50-100 dollars.)                "HUGH MOONEY.
" with intent," etc.

1. Appellant's first contention is, that the verdict is contrary to evidence, for the reason that it does not appear from the evidence that defendant passed the check as the genuine check of Hugh Mooney. This position is predicated upon the fact appearing from the evidence that when defendant was passing the check Shubert expressed doubt as to the signature, and the defendant stated that he had been working for Mr. Mooney, and that Mr. Hugh Mooney was not at home when he (defendant) wanted to come to town, and that his son drew the check. Of course, this explanation was understood by Shubert as the defendant intended it should be, that the check

was the genuine check of Hugh Mooney, drawn by the son, and to which the son, as agent of the father in his absence, had signed the father's name. This, coupled with the fact that the check as presented by the defendant bore the name of "Hugh Mooney" appended to it, was in effect a representation that it was the genuine check of Hugh Mooney. The tender of a check purporting to be signed by a certain person is in itself a representation that the check is genuine. It will not be inferred that a person intends to present a forged check in the absence of evidence to that effect. The claim that the verdict is not supported by the evidence is without merit.

2. The questions asked of witnesses as to what the defendant said about the check, and the reply of the witnesses that defendant "said he had been working for Mr. Mooney," were perfectly competent and proper. This answer of the defendant was intended to explain how he came to have the check, and was therefore a part of what he said about the check, and the witnesses' answers were directly responsive to the questions asked of them.

3. The defendant testified in his own behalf that he paid cash for the check to one Gorman, from whom he received it, had never seen the check before that time, and thought it was a genuine check. On cross-examination, for the purpose of laying a foundation to show that he had made statements contradictory of his testimony, he was asked if he did not tell the district attorney in the presence of the sheriff that this check was made out in the Cone & Kimball store there, at the desk, just a short time before it was produced at Mr. Shubert's store, and that "you got another check that was made out in the Tremont Hotel." The defendant answered the question in the negative, and thereafter the prosecution was permitted to show by the sheriff and district attorney that the defendant did make that statement to them. The objections urged to this are: 1. That it was not proper thus to cross-examine the defendant in a criminal case; and 2. That the statement was in the nature of a confession, and made to the officers while under arrest, and therefore was not free and voluntary.

The defendant being a witness, he may be impeached the same as any other witness, either by showing his general bad reputation for truth, honesty, or integrity, or as provided in

section 2052 of the Code of Civil Procedure, "by evidence that he had made at other times statements inconsistent with his present testimony," and for the purpose of impeaching him in this latter way it is proper to lay the foundation for so doing in his cross-examination. (*People* v. *Little Pete,* 123 Cal. 373.) In *People* v. *Arrighini,* 122 Cal. 127, Temple, J., says, speaking of a defendant in a criminal case: "Doubtless, the prosecution may seek upon cross-examination to bring out evidence which tends directly to explain, qualify, or contradict his testimony."

As to the second objection, our attention has not been called to any case in which it has been held that a confession is not free and voluntary merely because it is made to the officers while under arrest. In all the cases cited to us by appellant there has been some statement made to the prisoner that it would go better with him if he made a "clean breast of it," or some other inducement of that character, or some threat. In the case before us it affirmatively appears that no threats were made or inducements held out to procure the statement introduced in evidence. The objection that the statement was not shown to be free and voluntary is not well taken. It is not necessary, therefore, to determine whether the statement amounted to a confession or not. The reference in the question to "another check that was made out in the Tremont Hotel" could not have harmed defendant, as there was nothing in any way indicating that such check was forged or that any one had tried to pass it.

4. The court instructed the jury to the effect that in order to convict they must believe that defendant represented to Shubert either that the check was signed by Hugh Mooney or by his son John, writing Hugh Mooney's name on the check as the signature thereto. This instruction was correct, with the possible exception that it was improperly limited to the son John, there being some evidence that there was a son other than John. But this defect was more favorable to defendant than otherwise, and must be here regarded as immaterial.

The court properly refused to instruct the jury as requested by defendant, as follows: "If you find from the evidence that the defendant at the time told said Shubert that Hugh Mooney

did not sign the check, then you must find the defendant not guilty.'' Such an instruction, or any instruction of that nature, would have been misleading in view of the evidence already adverted to, showing that the defendant, to disarm Shubert of apparent suspicion as to the signature, had conveyed to Shubert the idea that the name of ''Hugh Mooney'' had been signed to the check by the latter's son. Of course, the check would have been as valid and binding on the father if his name was signed with his authority by the son as if the check bore the father's personal signature.

Other objections are urged to the instructions, all, however, of the same nature as the foregoing. We see no error in the record, and advise that the judgment and order be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.