[Crim. No. 1155.  First Appellate District, Division One.—July 1, 1924.]

# THE PEOPLE, Respondent, v. CHARLES L. BAENDER, Appellant.

[1] CRIMINAL LAW — PROCURING AND OFFERING FALSE AND FORGED DEED FOR FILING—VIOLATION OF SECTION 115, PENAL CODE—JUDGMENT—SUFFICIENCY OF EVIDENCE.—In this prosecution for having knowingly procured and offered for filing in a county recorder's office a false and forged deed, in violation of section 115 of the Penal Code, the evidence establishes a violation of said section and is sufficient in law to sustain the judgment of conviction.

[2] ID.—FRAUD—DESIGN OF SECTION 115, PENAL CODE.—Section 115 of the Penal Code was obviously designed to prevent the recordation or registration of spurious documents which were knowingly offered for record with intent to defraud.

[3] ID.—USE OF FICTITIOUS NAME—IDENTITY OF PERSON AND NAME.— The doctrine that if a person is in existence and ascertained, a conveyance to or by him by a fictitious name passes title, which doctrine is founded upon the established fact that the particular person named as grantee was known and identified by such fictitious name either by having voluntarily assumed the same or by having been generally known by such name, has no application where the person claiming to be the grantee in a deed never was known by the name of, nor did he pretend to be, the party named as grantee in such deed, and where the party named as grantee in such deed was intended to be and in fact was the brother-in-law of said person claiming to be the grantee.

[4] ID.—DEEDS — INTENT — SIGNING OF DEED AND IMPERSONATION OF GRANTOR—FORGERY—SECTION 115, PENAL CODE.—In such prosecution, where the person named as grantee in a deed was intended to be and in fact was the brother-in-law of defendant, the signing of the brother-in-law's name as a grantor by another to a deed, and the impersonation of the brother-in-law in the acknowledgment of the latter deed constituted the same a false and forged instrument within the meaning of section 115 of the Penal Code.

[5] ID.—SIGNATURE AND ACKNOWLEDGMENT OF DEED BY WOMAN IMPERSONATOR—EVIDENCE—FORGERY.—In such prosecution, where the de-

3.  Validity of deed to fictitious grantee or one under assumed name, note, 10 Ann. Cas. 97.  See, also, 9 Cal. Jur. 127; 8 R. C. L. 958.

5.  Use of fictitious name as forgery, notes, 18 Ann. Cas. 482; 9 A. L. R. 407.  See, also, 12 Cal. Jur. 654; 12 R. C. L. 144.

fendant procured a woman to impersonate the wife of his brother-in-law and had her sign and acknowledge the deed as a grantor in a fictitious name, and there had been no conveyance to the person designated by said fictitious name, nor was there anyone identified with the transaction known by that name, the signing of that fictitious name to the deed for a fraudulent purpose constituted forgery.

[6] Id.—Title—Immateriality of.—In such prosecution, in determining the guilt of defendant the question of investiture of title in his brother-in-law, who it is claimed never acquired or possessed title, is not material.

[7] Id.—Instrument Void on Face—Forgery.—There can be no forgery of an instrument which is void upon its face.

[8] Id.—Deed Valid upon Its Face—Conveyance of No Title—Forgery.—In such prosecution, the deed purporting to be the deed of defendant's brother-in-law who by virtue of the conveyance to him had become the record owner of the property, being valid upon its face, it would be the subject of forgery, even though it may have conveyed no title, for the rule is that "a deed may be the subject of such a crime [forgery] and in that case it is immaterial that the deed purports to grant land to which the grantor named had no title."

[9] Id.—Fraud—Intent—Evidence.—In such prosecution, in order to establish forgery it was not necessary to prove that defendant's brother-in-law or any other person was actually defrauded, if in fact it be shown that the deed purporting to be the brother-in-law's deed might possibly deceive another and was prepared with the intent to deceive and defraud another.

[10] Divorce—Life Estates—Interlocutory Decree.—While the entry of an interlocutory decree of divorce, giving a wife a life estate in real property, vested no present interest in the property in the wife, the life estate thereby awarded being merely inchoate in character, nevertheless said decree would have become final if not reversed or modified on appeal, and said life estate would have then become operative.

[11] Criminal Law—Signing and Acknowledgment of Deed by Impersonator—Intent to Defraud—Deception—False and Forged Instrument.—The signing of a grantor's name to a deed, valid upon its face, by another, and the impersonation of the grantor in the acknowledgment of said deed, with intent on the part of the

---

7. Injurious nature of forged instrument as element of forgery, notes, 3 Ann. Cas. 293; 9 Ann. Cas. 1111. See, also, 12 Cal. Jur. 652; 12 Cal. Jur. 148.

10. See 9 Cal. Jur. 760; 9 R. C. L. 442.

person procuring such signature and impersonation to defraud his wife of a life estate in the property covered by such deed, and the actual deception of a title company in insuring title in the belief that such deed is genuine, constitutes such deed a false and forged instrument within the meaning of sections 115 and 470 of the Penal Code.

[12] ID.—PROCURING SPURIOUS DEED FOR RECORDATION—KNOWLEDGE OF FALSITY—EVIDENCE.—In such prosecution, the evidence sufficiently shows that the defendant offered or procured the spurious deed to be recorded and knew that the deed was false or forged at the time he procured it to be recorded.

[13] ID.—SECTION 115, PENAL CODE—CONSTRUCTION.—Section 115 of the Penal Code simply seeks to cover as coming within its terms the various classes of instruments entitled under our law to be recorded, such as deeds, mortgages, etc., without any regard whatever, whether the particular instrument is defective in form or certification.

[14] ID.—EVIDENCE—DEED—EXHIBITS—ADMISSIBILITY OF.—In such prosecution, the deed in question being false and forged and being the very subject of the prosecution, was admissible in evidence, and other exhibits, consisting of a letter from the defendant to his wife concerning a life estate awarded by an interlocutory decree in the property covered by the deed, and of the judgment and findings in the divorce proceeding between defendant and his wife, were properly admitted as evidence upon the subject of intent to defraud.

[15] ID.—EVIDENCE—ADMISSIBILITY OF LETTER.—In such prosecution, the provisions of section 1881 of the Code of Civil Procedure did not operate to exclude the letter from the defendant to his wife concerning the life estate from evidence in connection with the testimony of the attorney for the wife, the latter not having testified concerning said letter.

[16] ID.—IMPANELMENT OF JURORS—ABSENCE OF ERROR.—In such prosecution there was no error committed by the trial court in the impanelment of the jury for the reason that the record does not show that any of the jurors who tried said cause had been discharged as such within a year.

[17] ID.—INSTRUCTIONS.—In such prosecution the jury was fairly, fully, and clearly instructed on all legal matters involved.

[18] Id.—Indictment.—In such prosecution, the indictment conformed to all requirements of the law and the demurrer was properly overruled.

(1) 26 C. J., p. 926, sec. 57, p. 974, sec. 142. (2) 26 C. J., p. 926, sec. 57. (3) 18 C. J., p. 176, sec. 56. (4) 26 C. J., p. 926, sec. 57. (5) 26 C. J., p. 899, sec. 9, p. 918, sec. 39. (6) 26 C. J., p. 926, sec. 57. (7) 26 C. J., p. 909, sec. 25. (8) 26 C. J., p. 917, sec. 39, p. 918, sec. 39. (9) 26 C. J., p. 906, sec. 20. (10) 19 C. J., p. 339, sec. 783 (Anno.). (11) 26 C. J., p. 926, sec. 57. (12) 26 C. J., p. 974, sec. 142. (13) 26 C. J., p. 926, sec. 57. (14) 26 C. J., p. 962, sec. 120 (Anno.), p. 966, sec. 128. (15) 40 Cyc., p. 2213. (16) 17 C. J., p. 169, sec. 3461 (Anno.). (17) 26 C. J., p. 977, sec. 154. (18) 26 C. J., p. 931, sec. 68.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Milton E. D'Askquith for Appellant.

U. S. Webb, Attorney-General, Wm. F. Cleary, Deputy Attorney-General, Ezra Decoto, District Attorney, and Chas. Wade Snook, Deputy District Attorney, for Respondent.

KNIGHT, J.—The defendant Charles L. Baender was charged by indictment with having knowingly procured and offered for filing in the office of the county recorder of Alameda County a false and forged deed. Upon that charge he was tried and convicted and from the judgment of conviction and the order denying his motion for a new trial he has appealed.

The indictment was drawn under, and the appellant was prosecuted for a violation of, section 115 of the Penal Code, which provides that "every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within the state, which instrument if genuine might be filed or registered or recorded under any law of this state or of the United States, is guilty of a felony."

Section 470 of the Penal Code defining forgery, in so far as it applies to this case, provides that "every person who

with intent to defraud, signs the name of another person, or of a fictitious person, knowing at the time he has no authority so to do . . . is guilty of forgery."

One of the main contentions of appellant on this appeal is that the deed in question was not a false and forged instrument within the meaning of said code section defining forgery.

The facts disclosed by the record are as follows: The real property described in the deed in question had been the community property of Baender and his wife for a number of years. In 1919 the property was about to be sold under execution by the sheriff and in order to save it Baender requested one Schyler, with whom he had been and was then associated in a business transaction, to bid in said property at the sheriff's sale. This was done and when the business relation existing between Schyler and Baender was ended Baender requested Schyler to convey the property to his brother-in-law, G. F. Gillelen, of Los Angeles, the latter being married to Baender's sister, whose name was Matilda A. Gillelen. Schyler executed the deed accordingly except that the surname of the grantee was misspelled at Baender's request, for reasons which will hereinafter appear. The Gillelens of Los Angeles paid no consideration for the property and in fact knew nothing about this transaction, but Baender's wife had full knowledge thereof. The deed was delivered to Baender. Thereafter, on August 11, 1921, Mrs. Baender was granted an interlocutory decree of divorce, by the terms of which the property in question was declared to be community property, and upon stipulation Mrs. Baender was awarded a life estate therein. Subsequent to the date of the granting of said decree, Baender, without the knowledge of his wife, opened negotiations with a real estate firm, named Faustina and Pelton, for an exchange of properties. An agreement was eventually reached whereby Baender agreed to exchange the property in question for other real property and a cash bonus of seven hundred dollars. During the course of those dealings Baender represented several times to Faustina and Pelton that his property stood in the names of his brother-in-law and sister of Los Angeles, and that they would come from Los Angeles to sign the deed. On the morning of November 22, 1921, Baender appeared before J. F. Holm, a notary public in Oakland, accompanied

by a man and woman, whom he introduced to Holm as Mr. and Mrs. Gillelen from Los Angeles. He requested Holm to prepare for their execution a deed to said property. Holm declined to draw the deed and the parties left with the understanding that they would have the deed drawn elsewhere and return to Holm's office that afternoon to execute the same before him as notary public. That afternoon Baender returned to Holm's office accompanied by the man but not by the woman. He explained to Holm that the woman whom he referred to as Mrs. Gillelen was ill and requested that Holm take her acknowledgment over the phone, she having already signed the deed in the name of "Ada M. Gillellen." Holm did so and thereupon the man signed the deed and acknowledged the same as "G. F. Gillellen." By that deed said property was at the request of Faustina and Pelton conveyed to one Charles Baumann. The deed was then delivered to Baender. Pursuant to the exchange agreement Baender on December 1, 1921, delivered said deed, together with the Schyler to Gillellen deed and with certain written escrow instructions to the Alameda County Title Company, who were acting also in the matter for the other parties to the exchange. When the transaction was ready to be concluded the title company upon the strength of the representations made by Baender supported by the recitals in the notarial certificate to the effect that the Gillelens of Los Angeles had signed the deed, issued title insurance upon the Baender property and thereafter, pursuant to said escrow instructions, carried out the necessary legal requirements to consummate the exchange of the properties, including the filing for record on December 5, 1921, of the Gillellen to Baumann deed. The evidence further shows that on or about January 31, 1922, about seven weeks subsequent to the attempted disposal of the property in question, the appellant mailed Mrs. Baender the following letter:

"Lately.

"Mrs. Baender

"I have this day deposited for you $30.00 in the State Savings Bank, 13th and Franklin Streets, for the children.

"I hear that you and your lawyers are having a little fun all to yourselves over some property on 20th Street. Am I right?

"Well, enjoy yourself while you are still young. I really believe that life estate of yours can be made the source of a real and constant pleasure for you, Albert and your lawyers. You will have entertainment for several years.

"CHARLIE."

Following the receipt of that letter it was discovered that the man who executed the deed to Baumann was not Gillelen, the brother-in-law of Baender, and that the woman who also signed said deed was not Baender's sister. They were strangers whose services were procured by Baender for the very purpose of impersonating his relatives in the matter of effecting a transfer of the title to said property. The Gillelens of Los Angeles, as a matter of fact, knew nothing about the transaction until some time after it had occurred. Baender's indictment and arrest followed.

[1] We are of the opinion that the evidence above narrated, when considered along with the additional evidence which will be hereinafter set forth, establishes a violation of the code section under which the appellant was charged and is sufficient in law to sustain the judgment of conviction. [2] Section 115 of the Penal Code was obviously designed to prevent the recordation or registration of spurious documents which were knowingly offered for record with intent to defraud. The evidence here briefly stated shows that in order to avoid the demands of creditors the appellant, with full knowledge on the part of his wife, with whom he was then apparently on friendly terms, caused the title to their community property to be placed in the name of his brother-in-law, and thereafter, and after his wife had obtained an interlocutory judgment of divorce and had on stipulation by that interlocutory judgment been awarded a life estate in said community property, he endeavored to defeat said life estate by disposing of the property, and in order to accomplish that purpose procured strangers to impersonate his brother-in-law and his sister in the execution of the deed by which the disposal was made.

[3] Appellant's contention that said deed was not false and forged is based upon the assertion that Schyler conveyed the property to him; that at his request he took title under the fictitious name of "G. F. Gillellen" and that having thus taken title in such name he was vested with full authority to use that name in divesting himself of title, either

by signing that name personally, or by procuring another to sign it for him. In this respect appellant testified that in spelling the name of his brother-in-law it properly contained but three "l's—G-i-l-l-e-l-e-n—but that he purposely caused the name of the grantee in said deed to be spelled with four "l's," so that such grantee would in fact be a fictitious person, thereby allowing him, the appellant, as the fictitious Gillellen to reconvey the property in that name. In support of such contention appellant cites the cases of *Emery* v. *Kipp,* 154 Cal. 83 [129 Am. St. Rep. 141, 16 Ann. Cas. 955, 19 L. R. A. (N. S.) 983, 97 Pac. 17], and *Wilson* v. *White,* 84 Cal. 242 [24 Pac. 114], which he claims legally justified the course adopted by him in transferring the title to such property. Those cases hold to the doctrine that if a person is in existence and ascertained, a conveyance to or by him by a fictitious name passes title. But upon examination of those cases, and the cases cited by them, it will be seen that the doctrine there applied is founded upon the established fact that the particular person named as grantee was known and identified by such fictitious name either by having voluntarily assumed the same or by having been generally known by such name. In other words, the doctrine contended for by appellant is applied where there is a concurrence of identity in person and in name. For instance, in *Wilson* v. *White, supra,* it is said: "It is involved in the very conception of a deed that there must be a grantee, to whom delivery is made, and in whom the title can vest. If there be no grantee, and the deed is to a mere fictitious name, it is obvious that it is a nullity. But if there be a person in existence, and identified, and delivery is made to him, it makes no difference by what name he is called. He may assume a name for the occasion; and a conveyance to and by him under such name will pass title." And again, in *Blinn* v. *Chessman,* 49 Minn. 140 [32 Am. St. Rep. 536, 51 N. W. 666], quoted approvingly in *Emery* v. *Kipp, supra,* the court says: "The name is not the person, but only a means of designating a person intended; and where one assumes or comes to be known by another name than that which he properly bears, that name may be effectually employed for the purpose of designating him." That is not the situation here. The evidence in the case at bar proves beyond question, we think, that the grantee

specified in said deed was intended to be and in fact was G. F. Gillelen, of Los Angeles, the brother-in-law of appellant, and not the appellant, and it further shows, that throughout this entire transaction, appellant consistently so claimed and represented to all of those with whom he was dealing. According to the undisputed facts, appellant never was known as, nor did he pretend to be G. F. Gillellen, the party named as the grantee in the Schyler deed. They were always known and treated as separate individuals. He was personally known to all of the parties to this transaction— Schyler, Holm, Faustina, and Pelton, and the representatives of the title company—as Baender. Schyler testified that Baender instructed him to deed the property to "Mr. Gillelen his brother-in-law in Los Angeles." The deed was executed accordingly, describing the grantee as a resident "of the city and County of Los Angeles." During the negotiations for the exchange of the properties Baender represented to Faustina and Pelton that the property stood in the names of his brother-in-law and sister of Los Angeles. When Baender appeared in the office of Holm for the purpose of having him prepare and as notary acknowledge the deed, to Baumann, he represented to Holm that the property stood in the names of his brother-in-law and sister of Los Angeles and he introduced the strangers to Holm as his brother-in-law and sister of Los Angeles, and the deed to Baumann designated "G. F. Gillellen and Ada M. Gillellen, his wife, of the city of Los Angeles, county of Los Angeles," as grantors. After the deed was executed Baender represented to Faustina and Pelton and to the title company that said deed had been signed by the Gillelens of Los Angeles.

That it was the intention of the appellant to transfer the title to the name of his brother-in-law, Gillelen, of Los Angeles, and not to himself is further supported by appellant's own testimony, wherein he stated that he deposited the Schyler deed in his desk and attached to it written instructions to the effect that in the event of his, appellent's, death, the deed should be delivered to his brother-in-law, G. F. Gillelen, for the purpose of making him trustee to handle the property as he might deem best, and he further explained that he believed that in that situation his brother-in-law in divesting himself of title might spell his name both ways and thereby overcome the misspelling of the name in the

Schyler deed. It will therefore be seen that because of the dissimilarity in facts, as above pointed out, between those cases relied upon by appellant and the facts of the instant case, the doctrine of those cases is not available to appellant. [4] And it being manifest that the person named as grantee in the Schyler deed was intended to be and in fact was G. F. Gillelen, of Los Angeles, the brother-in-law of appellant, the signing of the latter's name by another to the deed in question, and the impersonation of him in the acknowledgment thereof constituted said deed a false and forged instrument within the meaning of the code section above quoted. [5] Even were it possible to reach a conclusion different from the one stated, so far as the name of the grantor in the deed is concerned, we are still confronted with the situation that the appellant also procured a woman to impersonate the wife of G. F. Gillelen and had her sign and acknowledge said deed in the fictitious name of "Ada M. Gillellen." The name of appellant's sister was Matilda A. Gillelen. The conveyance was not made to Ada M. Gillelen nor was there anyone identified with the transaction known by that name. Therefore the signing of that fictitious name to said deed for a fraudulent purpose clearly constituted forgery. (*People v. Chretien,* 137 Cal. 450 [70 Pac. 305].)

Appellant endeavors to make the question of the investiture of title in Gillelen the pivotal point upon which the commission of the act of forgery turns, claiming that if title was not at any time vested in Gillelen, conceding him to be the person who was named as grantee in the Schyler deed, the crime of forgery was not committed. This contention is based upon the theory that no title was ever acquired by Gillelen for the reason that the Schyler deed was never delivered to or accepted by him and he paid no consideration for the property; that if Gillelen possessed no title he consequently had none to convey and that therefore any deed which Gillelen might have made purporting to convey title would have been void. To this state of facts appellant attempts to apply the rule that there can be no forgery of a void instrument.

[6] We are of the opinion that the question of the investiture of title in Gillelen is not material. The respond-

ent does not claim that Gillelen even acquired title and we
think it matters little whether or not he did.

[7] It is doubtless the law that there can be no forgery
of an instrument which is void upon its face. (*People* v.
*Tomlinson,* 35 Cal. 506.) [8] But this was not such a
deed. Upon its face this deed was valid. It purported to
be the deed of Gillelen who by virtue of the Schyler con-
veyance had become the record owner of the property, and
whose deed, if genuine, would have formed a material link
in the chain of title from Schyler through Gillelen to Bau-
mann. That being so, Gillelen's deed would be the subject
of forgery, even though it may have conveyed no title, for
the rule is well established that "a deed may be the subject
of such a crime [forgery] and in that case it is immaterial
that the deed purports to grant land to which the grantor
named had no title." (*People* v. *Van Alstine,* 57 Mich. 69
[23 N. W. 594] ; *Abston* v. *State,* 134 Tenn. 604 [185 S. W.
706].) To the same effect are *West* v. *State,* 22 N. J. L.
212; *Henderson* v. *State,* 14 Tex. 503, and authorities therein
cited. [9] Nor was it necessary in order to establish for-
gery to prove that Gillelen or any other person was actu-
ally defrauded, if in fact it be shown that said deed might
possibly deceive another and was prepared with the intent
to deceive and defraud another. (*People* v. *Turner,* 113 Cal.
278 [45 Pac. 331] ; *Henderson* v. *State, supra.*) In *Hender-
son* v. *State, supra,* it was said: "The intent to defraud, it
is true, is of the essence of the crime. But it is not essential
that any person be actually defrauded, or that any act be
done toward the attainment of the fruits of the crime other
than the making of the instrument. And the very fact of
the forgery itself will be sufficient to imply an intention to
defraud; or at least it will be sufficient if, from the circum-
stances of the case, the jury can fairly infer that it was the
intention of the party to utter the forged instrument (3
Greenleaf on Evidence, sec. 103; 3 Archibald on Criminal
Pleading, 546; 2 Russell on Crimes, 361 [7th Am. from
3d London ed.]), and *a fortiori* if, as in this case, there is
proof that he did utter it. It is well settled, it is true, as
held in a case cited by counsel (*People* v. *Shall,* 9 Cow.
(N. Y.) 778), that the forging of an instrument which on
its face is void is not indictable. But that is not this case.

The deed on its face appears to be a valid, legal conveyance of land. And it is sufficient that it is such a character of instrument that the consequences of the forgery would necessarily or possibly be to defraud some person. It is sufficient if it appear that by possibility either the state or some person might be defrauded. (Act above cited; 3 Greenleaf on Evidence, sec. 103; 2 Russell on Crimes, 361, note; 2 N. J. 212.)''

That the spurious deed in question did actually deceive the title company and that by its execution appellant intended to defraud his wife of her life estate is obvious. Acting upon the belief that it was the genuine deed of the Gillelens the said title company insured the title, and in view of the letter hereinabove set forth, written by appellant to his wife, less than two months after the transaction in question was concluded, there can be but little doubt of his intention to defeat his wife's interest in the property, which he had previously stipulated should be awarded to her by said judgment of divorce. **[10]** While the entry of such interlocutory decree vested no present interest in the property in Mrs. Baender, the life estate thereby awarded being merely inchoate in character, nevertheless said decree would have become final if not reversed or modified on appeal. The said life estate would have then become operative. (*Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 604], and cases cited.) **[11]** For the reasons stated it must be held that said deed was a false and forged instrument within the meaning of said code sections.

**[12]** Appellant further urges that the evidence fails to show that the appellant offered or procured the deed to be recorded or that appellant knew that the deed was false or forged at the time he procured it to be recorded. We find no merit in either point. The written escrow instructions signed by appellant authorized said title company to record said deed when the agreement for exchange was complied with by the other parties to the transaction. These escrow instructions were supplemented by oral instructions given by the appellant to the representatives of the title company to the effect that the representatives of the title company were at liberty to record the deed to the Oakland property when the appellant received from the other parties the money due and the deed to the property to be taken in exchange.

The transaction was afterward consummated accordingly and the Gillelen to Baumann deed was recorded. The evidence already narrated is sufficient answer, we think, to the other point made, that the appellant did not know that the deed in question was false or forged.

[13] The contention made by appellant that there is no proof that the "genuine" counterpart of the alleged forged deed might be recorded is disposed of by the case of *People* v. *Webber,* 44 Cal. App. 120 [186 Pac. 406], where it is held that section 115 of the Penal Code, under which this indictment was brought, "simply seeks to cover as coming within its terms the various classes of instruments entitled under our law to be recorded, such as deeds, mortgages, etc., without any regard whatever, whether the particular instrument is defective in form or certification. The instrument in question on its face was a deed properly acknowledged in form expressing a valuable consideration and therefore an instrument which if genuine was entitled to be recorded under the laws of this state."

Appellant also complains of the rulings of the trial court in admitting in evidence the deed in question, the letter from Baender to his wife and the judgment and findings in the Baender divorce proceeding. [14] The deed being false and forged and being the very subject of the prosecution, was clearly admissible in evidence and the other exhibits referred to were properly admitted as evidence upon the subject of intent to defraud. [15] The provisions of section 1881 of the Code of Civil Procedure do not operate to exclude said letter from evidence in connection with the testimony of A. T. McDonald, the attorney for Mrs. Baender. Mrs. Baender did not testify concerning said letter. (*People* v. *Swaile,* 12 Cal. App. 195 [107 Pac. 134].)

[16] There was no error committed by the court in the impanelment of the jury for the reason that the record does not show that any of the jurors who tried said cause had been discharged as such within a year.

The final contention of the appellant is that the court's instructions to the jury were erroneous and that it erred in refusing to give certain instructions proposed by the appellant. Appellant's objections cover some twenty-four instructions and for that reason it is impracticable in this opinion

to discuss the rulings of the court on each separate instruction. **[17]** We have examined the court's charge and also the instructions offered by the appellant which were by the court refused, and it is our opinion that the jury was fairly, fully and clearly instructed on all legal matters involved. Many of the instructions proposed by the appellant and which were by the court refused related to the question of the passing and vesting title in connection with the delivery of deeds. As heretofore stated, that question was not material in determining the guilt of the defendant and those instructions were, therefore, properly refused. The other instructions refused either misstated the law or assumed facts not in evidence. **[18]** The indictment conforms to all requirements of the law and the demurrer was properly overruled.

Finding no error in the record, the judgment and order appealed from are affirmed.

Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 28, 1924.

All the Justices concurred.