[Civ. No. 5453. First Appellate District, Division One.—June 24, 1927.]

LAURA M. KNAUGH, Respondent, v. LILLIE BAENDER, Appellant.

L. Gonsalves and A. T. MacDonald for Appellant.

Nusbaumer & Bingaman and Ralph W. Arnot for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a decree quieting title to certain real property in an action brought by respondent against appellant and others. Appellant in her answer denies the title of respondent and by way of cross-complaint alleges title in herself and has brought in under an order of court the parties herein designated as cross-defendants.

The property involved was originally the community property of one Charles L. Baender and defendant and cross-complainant Lillie Baender, and the same was acquired previous to the year 1917. On August 24, 1919, a writ of execution was issued out of the superior court of Alameda County in the case of *Arthur T. Johns* v. *Charles L. Baender and Lillie M. Baender et al.*, and at such execution sale on November 18, 1919, one F. B. Schuyler purchased the property. On November 10, 1919, Charles L. Baender and Lillie M. Baender and others conveyed the property to F. B. Schuyler. On November 20, 1919, Schuyler conveyed the property to G. F. Gillellen; November 22, 1921, G. F. Gillellen and Ada M. Gillellen conveyed the property to Charles Baumann; December 12, 1921, Charles Baumann and Elsie Baumann, his wife, conveyed the property to Laura M. Knaugh, and on February 17, 1922, Laura M. Knaugh conveyed the property to Cora B. Dermott. Such is the claim of title as shown by the records. On August 17, 1921, a decree was entered granting Lillie Baender an interlocutory decree of divorce from Charles L. Baender, and by such decree the court set aside the property in controversy to Lillie Baender for life. An appeal was taken from the interlocutory decree of divorce; the appeal was subsequently dismissed and the *remittitur* was sent down to the trial court on July 7, 1922.

On the date of the execution sale by the sheriff in August, 1919, and just previous to the bid of Schuyler for the property one Niels Gostave, who at the time had the record title to the property, but which was owned by Charles L. Baender and Lillie M. Baender as community property,

together with Charles L. Baender and Lillie M. Baender and other persons by grant, bargain, and sale deed conveyed said property to F. B. Schuyler. The facts and circumstances surrounding the execution of this deed and the bid of Schuyler at the execution sale as appears from the evidence were as follows: Charles L. Baender and F. B. Schuyler were dealing together concerning the purchase by Schuyler of an invention made by Baender. During such negotiations the execution sale referred to was advertised, and Baender requested Schuyler to come to his rescue. Baender raised $275, which was all the money he could raise to purchase the property at the execution sale, and Schuyler advanced the remaining $500 necessary to bid the amount of the judgment and costs, and the property was purchased in the name of Schuyler. Previous to the execution sale Charles L. Baender and appellant Lillie Baender for reasons of their own carried the record title to the property in the name of one Niels Gostave, but this fact having been discovered by plaintiff in the action of *Johns* v. *Baender et al.*, the execution sale was proceeded with regardless of the record title in Niels Gostave, and under the judgment in that case holding the conveyance to Niels Gostave void. Schuyler was brought into the transaction and instead of making a loan to Baender on a mortgage took a deed absolute on its face, which the court in its findings found to be a mortgage. ■ Against this finding of the court the appellant urges the objection that it is not supported by the evidence. We are of the opinion that the evidence supports the finding of the trial court in this respect. The record discloses that Baender and Schuyler at the time of the transaction, in order to make it appear that Schuyler was an actual purchaser, arranged the transaction as follows: an additional sum of $2,000 was apparently paid over by Schuyler to Baender at the office of the Alameda County Title Insurance Company, but which sum was immediately and as soon as Baender and Schuyler went outside the Title Company's office paid back to Schuyler by Baender by agreement previously arranged between them. So far as the transaction appeared on its face, Schuyler was the purchaser at the execution sale for the sum of $775 and a purchaser of the equity under a deed from Niels Gostave, Charles L. Baender, appellant Lillie Baender,

and others for the sum of $2,000. Such, however, was not the fact. Baender himself paid $275 of the $775 bid at the sale, and Schuyler advanced the difference. On November 18, 1921, over two years later, Schuyler received a sheriff's deed to the property. Baender and Schuyler both testified that the $500, being the money Schuyler actually advanced, was a loan and the deed was taken as security.

The following, quoting from the testimony of Schuyler and Baender, is sufficient to support the finding of the trial court that the deed was intended as a mortgage. Schuyler testified: "Q. Didn't you tell me last night that the deed was merely taken as a bond, that if the patent was not issued, that you would be safe in your money? A. That is what I told you now: if the patent issued I would have the property with the money that I put up. But if the patent—that is, if the patent did not issue. But if the patent did issue, I was to buy it back with the property. Q. You were to reconvey the property if the patent issued? A. Yes, sir. Q. And the property itself was merely taken as security that the patent would issue? A. No, taken as security for the money that I advanced. Q. It was taken as security for your money. A. Sure. When you put up any money you get property as security, don't you?" Baender testified: "Q. Now, you say this $2,000 and the Twentieth-street property were turned over to you by Mr. Schuyler in payment for one-half interest in this invention; is that true? A. In order to make clear, I think I can explain a little more fully. Mr. Schuyler advanced on the invention $500, which he paid to the sheriff for this property, and he took that property as security for the $500 that he advanced as part payment . . . Q. Was there any understanding or agreement between you and Mr. Schuyler to the effect if letters patent did not issue, you were to give him back the money or property? A. No, sir, there was not anything in writing to that effect. There was a verbal agreement if the patent did not issue I would give him back the $2,000. Q. Or the property; is that it? A. Either one."

The testimony, together with the inferences logically to be drawn from the circumstances surrounding the transaction considered most favorable from appellant's viewpoint, creates merely a conflict in the evidence. If the evidence

offered by respondent taken by itself was sufficiently clear, satisfactory, and convincing to satisfy the trial court that the deed was in fact a mortgage, such finding will not be disturbed on appeal. (*Couts* v. *Winston,* 153 Cal. 686 [96 Pac. 357]; *Hillwig* 'v. *Boyer,* 81 Cal. App. 763 [254 Pac. 662].)

Baender and Schuyler continued to deal with each other concerning Baender's invention and the sale thereof to Schuyler. During the negotiations Baender got into trouble and Schuyler advanced the sum of $2,000 for bail for Baender, this money being the $2,000 referred to in the testimony of Baender quoted above. The money was paid on an assignment of a one-half interest in the invention and had nothing to do with the original transaction concerning the property. The testimony shows that it was agreed between Baender and Schuyler that, if the patent for the invention was issued, the patent was to be sold to Schuyler and he was to be paid the money he advanced at the execution sale. As a result Schuyler considered the obligation eliminated and was prepared to reconvey the property to Baender or to whomever he desired it conveyed. Baender not desiring to take the title in his own name, had Schuyler make the deed to G. F. Gillellen, which the court found in its findings to be an assumed name. This name was very similar to the name of Baender's brother-in-law, with the exception that the brother-in-law's name was spelled with three "l's" instead of four, and the deed was delivered by Schuyler to Baender, Schuyler's testimony being that he was delivering the title to Baender as Baender should request, as he had no further interest in the matter. Baender testified that he used a name very closely resembling the name of his brother-in-law in order that in case of death his brother-in-law might be able to convey the property without the necessity of probate under certain instructions that he thereafter wrote upon a typewriter and pinned to the deed.

Baender testified that it is not true that at the time of making the Schuyler deed he had in mind his brother-in-law, G. F. Gillelen; it was C. L. Baender himself that he had in mind; that he never told anybody that the grantee in the deed from Schuyler to Gillellen was his brother-in-law; that he never assumed the name of his brother-in-law and

sister and never signed the name G. F. Gillellen of Los Angeles; as a matter of fact, when he signed the name of G. F. Gillellen he signed it as his own—that there is no such thing as exclusive ownership of a name; that he assumed the name for convenience and that he authorized and directed the execution of the deed under the name Gillellen to Baumann.

The evidence is sufficient to support the finding that F. B. Schuyler gave to C. L. Baender, under the name of G. F. Gillellen, a deed to the property in question.

It is the settled law of this state that a person may assume any name in which to receive title to property and that if he assumes such a name a conveyance by him under such assumed name passes a good title (*Fallon* v. *Kehoe*, 38 Cal. 44 [99 Am. Dec. 347]; *Emery* v. *Kipp*, 154 Cal. 83 [129 Am. St. Rep. 141, 16 Ann. Cas. 792, 19 L. R. A. (N. S.) 983, 97 Pac. 17]), and in *Wilson* v. *White*, 84 Cal. 239, at page 242 [24 Pac. 114, 115], the court uses this language: "It is involved in the very conception of a deed that there must be a grantee to whom delivery is made, and in whom title can vest. If there be no grantee, and the deed is to a mere fictitious name, it is obvious that it is a nullity. But if there be a person in existence and identified and delivery is made to him, it makes no difference what name he is called. He may assume a name for the occasion, and a conveyance to and by him will pass title." It is urged that the deed is ineffective since it was not signed by Baender himself. The testimony, however, shows that it was signed by a person in Baender's presence, at his request, and with his authorization. This is a sufficient execution of the deed. In *Blaisdell* v. *Leach*, 101 Cal. 408 [40 Am. St. Rep. 65, 35 Pac. 1020], the court says: "The Civil Code, section 1091, requires that a grant of real property shall be subscribed by the grantor in order that the title may be transferred thereby, but it is not necessary that signature of the grantor be affixed by himself. It may be so affixed by another, if done in his presence and by his own direction. (*Gardner* v. *Gardner*, 5 Cush. (Mass.) 483 [52 Am. Dec. 740]), and he may also adopt and ratify a signature made by another without any previous authority (*Bartlett* v. *Drake*, 100 Mass. 174 [97 Am. Dec. 92, 1 Am. Rep. 101]); and the adoption of a

forgery has been held to be binding upon the maker of a promissory note (*Forsyth* v. *Day,* 46 Me. 176; *Greenfield Bank* v. *Crafts,* 4 Allen (Mass.), 447). The owner of property cannot be divested thereof by a forged instrument, but his conduct in reference to the instrument may estop him from denying its validity. As between himself and the person who committed the forgery such estoppel may not arise, but if, with knowledge of the forgery, he should declare to an innocent person that the signature was his own and that he had executed the instrument and thereby induced him to purchase the property, he could not afterwards claim the property upon the ground that the instrument was a forgery.''

█ If the deed held by Schuyler was merely a mortgage—and it was so found to be by the trial court—the deed from Schuyler to Baender under the name Gillellen, as grantee, would operate as a release of such mortgage, as was likewise found by the court. Appellant contends that the Gillellen deed was not acknowledged as required by law. The fact of a defective acknowledgment in no way affects the transfer of title (*Gordon* v. *City of San Diego,* 108 Cal. 264 [41 Pac. 301]).

█ Appellant claims that it was error to admit the Schuyler to Gillellen deed in evidence because of no pleading. The pleading was in the usual form of an action to quiet title, which has been held sufficient (*Rough* v. *Simmons,* 65 Cal. 227 [3 Pac. 804]; *Castro* v. *Barry,* 79 Cal. 443 [21 Pac. 946]). The admission of the deed was simply a matter of evidence under the pleading. The deed being proper in form was admissible without any preliminary proof (sec. 1915, Code Civ. Proc.). After its introduction evidence was offered and the court found that Baender had assumed the name Gillellen and that he had received the deed. This was sufficient to fix the identity in Baender. Appellant also claims error in admitting the deed from Baender under the name Gillellen as grantor to Baumann. There is likewise no merit in this claim of error.

█ The property in controversy was acquired by the Baenders prior to 1917, and it was stipulated at the trial that up to the date of the Baumann deed, which was November 22, 1921, the property was the community property of Charles L. Baender and Lillie M. Baender. On that date

Charles L. Baender under the assumed name of G. F. Gillellen deeded to Charles Baumann—his wife, Lillie M. Baender, not joining in the deed. Unless it be on account of the interlocutory decree of divorce entered on August 17, 1921, setting aside the property to Lillie M. Baender for life, this deed passed a complete title, as the husband's deed alone conveying community property for a valuable consideration, as in this case, acquired prior to 1917, passes a complete title without the necessity of the wife joining in the deed (*Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]).

Appellant urges that the interlocutory decree of divorce vested a life estate in the property in Lillie M. Baender and that, therefore, a deed to the property without her joining as a grantor did not pass complete title, and cites us to *Abbott* v. *Superior Court,* 69 Cal. App. 660 [232 Pac. 154], in which the court uses this language: "But when each and every period has expired within which an attack could have been made by motion or by appeal, then and in that event the so-called interlocutory decree, in so far as it adjudges the property rights of the parties, becomes a conclusive decree." In the instant case an appeal was taken from the interlocutory decree and such appeal was pending on November 22, 1921, when Charles L. Baender, under the assumed name of Gillellen, deeded to Charles Baumann. It is not material, however, when or if at all the interlocutory decree vested title in Lillie M. Baender, for by her deed to Schuyler she is estopped from asserting title as against a subsequent innocent purchaser for value. The title of an innocent purchaser for value as here and without notice of the true character of the conveyance cannot be disturbed; he is protected by the provisions of the statute and by his purchase becomes the real owner of the property (*Todd* v. *Todd,* 164 Cal. 259 [128 Pac. 413; *Carpenter* v. *Lewis,* 119 Cal. 18 [50 Pac. 925]; *Bell* v. *Pleasant,* 145 Cal. 410 [104 Am. St. Rep. 61, 78 Pac. 957]). The parties who executed and placed upon the record such deed are estopped as to a subsequent innocent purchaser for value from averring that the instrument is not such as it appears to be (17 Cal. Jur. 802, and cases cited). Appellant joined in the conveyance to Schuyler, which led subsequent purchasers for value to

ignore the divorce decree. It is well established that if one of two innocent persons must suffer loss, the one whose act is responsible for the loss must be the sufferer (Civ. Code, sec. 3543). Further than this, the evidence shows that Lillie M. Baender caused execution to issue for back alimony due in the divorce action and under the execution sold the property which Baender received in exchange for the property sold to respondent's predecessor in interest, thereby affirming the transfer of Charles L. Baender and ratifying his act, A wife by her own acts may ratify her husband's acts and affirm them (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537]).

Appellant is correct in the contention that, even though Baender could assume the name of Gillellen, he could not also assume the name of Ada M. Gillellen. Assuming the name Ada M. Gillellen is the basis for holding Baender criminally liable, but this name was not necessary to pass title. When Baender signed the assumed name G. F Gillellen, that of itself was sufficient to pass a good title without the name Ada M. Gillellen subscribed to the deed under the authority of *Roberts* v. *Wehmeyer, supra.*

Appellant has called our attention to the case of *People* v. *Baender,* 68 Cal. App. 49 [228 Pac. 536], which was an appeal by Charles L. Baender from a judgment of conviction of having offered for filing in the office of the county recorder of Alameda County a false and forged deed, the Charles L. Baender convicted being the same Charles L. Baender referred to here and the transaction being the offering for record for filing the deed from G. F. Gillellen and Ada M. Gillellen to Charles Baumann. Appellant here seeks to have us sustain appellant's contention by passing on conflicting evidence in the instant case and by drawing inferences from the case of *People* v. *Baender.* On established principles of law this cannot be done, as the evidence in the cases is not the same. In *People* v. *Baender* the letter upon which the court lays stress was introduced, but it is not in evidence in this action, and there are other differences as to the evidence and facts surrounding the trial. In *People* v. *Baender* a man was being tried by a jury, which found him guilty, but on evidence somewhat different than that in the instant case. The jury having found against Baender and that his intent was fraudulent,

all intendments were in favor of that finding and judgment, and the appellate court could hold only that all of Baender's defenses were untrue. The court did not usurp the province of the trial court and pass upon conflicting evidence. Here the court, having found that Baender's statement and act were clear of such fraudulent intent, all intendments and presumptions are in favor of the finding and judgment. In both cases there was a conflict in the evidence.

■ Appellant objects to the court's rulings allowing Charles L. Baender, when testifying as a witness, to refuse to answer certain questions on the ground that his answers would incriminate him and in sustaining an objection to a question propounded to the witness Schuyler as to whether he had any conversation with Baender in reference to making the quitclaim deed to Lillie Baender, this quitclaim deed being executed on December 9, 1921. Had the court's rulings been otherwise on these objections, it would have made no difference, as the question asked of Baender was to elicit the identity of the persons signing the assumed names, and the question asked of Schuyler was directed to a conversation which, if it occurred at all, was subsequent to the conveyance of the property to Baumann.

This disposes of the errors assigned by appellant. From what has been said it follows we find no error in the record. Furthermore, the equities of the case are all with the respondents.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 22, 1927.