[Crim. No. 5782.    Second Dist., Div. Two.    Dec. 16, 1957.]

THE PEOPLE, Respondent, v. CHARLES CHAPMAN, Appellant.

Harold J. Ackerman, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, Acting P. J.—Defendant was convicted of six counts of forgery (Pen. Code, § 470) and one count of grand theft (Pen. Code, § 487, subd. 1). He appeals from the judgment.[1]

Since defendant challenges the sufficiency of the evidence to sustain the conviction upon each of the counts, it is necessary to state the facts of each transaction in detail.

Count I relates to a check for $25 which Ruth Lander cashed for defendant on August 29, 1955. He entered a liquor store on Hollywood Boulevard, operated by Mrs. Nettie Brandt, between 8 and 9 o'clock in the evening of that date and asked Mrs. Brandt to cash a check for him. Mrs. Brandt mistook defendant for another man who had cashed a check at the store previously, and told defendant that she did not have sufficient money but that her daughter would be there later and would cash it for him. Her daughter, Ruth Lander, arrived at the store at approximately 10:45 p. m. Defendant returned shortly thereafter. Mrs. Lander did not know defendant, but she cashed the check because she understood her mother knew him. The check was dated August 30, 1955, made payable to the order of Robert Weldon for $25, was drawn on a check form of Trip-Charge, Inc., and was purportedly signed by Irving W. Parker, West Coast Division Manager for this company. Mr. Parker, however, did not sign the check, and did not authorize anyone to sign his name to it. In exchange for the check, Mrs. Lander gave defendant merchandise valued at $1.15 and the balance in cash. In due course the check was dishonored by the bank, and Mrs. Lander never received any money for it. She then notified the Trip-Charge company. Investigation disclosed that certain checks of that company were missing.

On August 30, 1955, a special checking account was opened

---

[1]Defendant's notice of appeal states that he also appeals from the order denying his motion for a new trial. The record, however, fails to disclose that a motion for a new trial was made. Hence the court had no such motion to rule upon. Therefore, the appeal from the nonexistent order will be dismissed.

in the name of Robert Weldon at the Hollywood-McCadden Branch of the Citizens National Bank. The initial deposit was $50. On the following day an additional deposit of $65 was made in the account. When the deposit slip was presented at the teller's window it was complete in all respects except the transit number, which the teller inserted. This deposit was made up of two checks, one purported to be the personal check of Irving W. Parker, payable to the order of Robert Weldon, in the sum of $15, and drawn on the California Bank; the second check was similar to the first except that it was dated August 31, 1955, and was in the sum of $50. The teller did not recall the person who presented the two checks. Mr. Parker did not sign either of these checks nor did he authorize anyone to sign his name to either of them. He first missed his personal checks when he examined his monthly bank statement and discovered that he had been charged with checks he did not draw.

On September 2, 1955, Robert Weldon deposited a check for $400 in the above mentioned account. The check was on a form of the Radio Audience Testing Bureau; it was numbered 0701, dated 9-1-55, payable to the order of Robert Weldon, and drawn on the Holland and Hollywood Branch of the Security-First National Bank. The check, purportedly signed by Nancy Akin who was the only person authorized to sign checks of this concern, was first missed when the bank called her on September 2d or 3d. She then discovered that one entire page had been taken out of a new checkbook. The page consisted of three checks, one of which was numbered 0701. Miss Akin did not sign the check in question nor did she authorize anyone else to sign it.

On September 6, 1955, defendant presented a completely filled out check to a teller at the bank where he had his above mentioned checking account. The check was in the amount of $200, payable to the order of cash, drawn on his account in that bank, and signed Robert Weldon. The teller did not require defendant to show any identification but examined his account to see whether it contained sufficient funds to cover the amount. The teller paid defendant the $200 represented by the check.

Early in September, 1955, an employee of Ralph's Grocery Company cashed a $50 check for a person who bought groceries in the amount of $8.59, and gave him the balance in cash. The check was dated September 3, 1955, and payable to the order of Robert Weldon; it was written on a form of

Trip-Charge, Inc., and bore the purported signature of Mr. Parker.

On or about September 12, 1955, another check dated September 8, 1955, in the sum of $50, payable to the order of Robert Weldon, was also cashed by Ralph's Grocery Company. This check, too, was on the form of Trip-Charge, Inc., and bore the purported signature of Mr. Parker. However, he neither signed nor authorized his signature on either of these checks. Neither of the employees who cashed the checks remembered the person who presented them.

The defendant did not take the witness stand, nor was any evidence offered in his behalf.

"The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud." (*People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065]; Pen. Code, § 470.) "To constitute forgery by uttering or passing a forged instrument as defined in section 470 of the Penal Code, three important factors are requisite: 1. It must be uttered, published, passed, or attempted to be passed, as true and genuine; 2. It must be known by the person uttering or passing it to be false, altered, forged, or counterfeited; 3. It must be with intent to prejudice, damage, or defraud some person." (*People* v. *Smith,* 103 Cal. 563, 565 [37 P. 516].) We must, of course, assume in favor of the verdict the existence of every fact which the jury reasonably could have deduced from the evidence. It is the settled law of this state that a conviction will not be reversed for insufficiency of the evidence unless it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

## COUNT I.

Applying these principles, it is apparent there is ample evidence to sustain defendant's conviction on count I. There can be no doubt that the check for $25 which he gave to Mrs. Lander in exchange for merchandise and cash was forged. It is a reasonable inference that defendant presented the check as a genuine document. As said in *People* v. *Walker,* 140 Cal. 153, at page 155 [73 P. 831], "The tender of a check purporting to be signed by a certain person is in itself a representation that the check is genuine. It will

not be inferred that a person intends to present a forged check in the absence of evidence to that effect." ▮ In the course of the transaction Mrs. Lander asked defendant, "How come you are cashing a check a day ahead of time."[2] Defendant replied: "Well, he gave me a check a day ahead of time." This statement logically refers to the drawer of the check and constitutes an implied representation that the check was genuine. Also the evidence reasonably supports an inference that defendant knew the check was forged. The person named as payee was Robert Weldon. The circumstances justify the inference that defendant represented himself to Mrs. Lander as the payee, Robert Weldon. Mrs. Lander's testimony supports such an inference. This conclusion is strengthened by the fact that the check (People's Exhibit 1) bears only two endorsements: the first is that of Robert Weldon, the second that of Mrs. Lander. ▮ In this connection it should be noted that "The possession of an instrument recently forged, by one claiming under it, like the possession of goods recently stolen, is evidence against the possessor." (*People* v. *Smith, supra,* p. 566; *People* v. *Cline,* 79 Cal.App.2d 11, 14 [179 P.2d 89]; *People* v. *Ruiz,* 103 Cal.App.2d 146, 149 [229 P.2d 73].) Also, it should be observed that defendant did not take the stand to explain how he was able to get possession of the check as payee without knowing that it was a forgery. ▮ While the "failure to testify will not supply a lacuna in the prosecution's proof" (*People* v. *Ashley,* 42 Cal.2d 246, 268 [267 P.2d 271]), "[a] defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3]" *ibid; People* v. *Goldstein,* 136 Cal.App.2d 778, 790 [289 P.2d 581]; *People* v. *Williams,* 151 Cal.App.2d 173, 189 [311 P.2d 117].) As pointed out in the *Adamson* case, *supra,* "[t]he failure of the accused to testify becomes significant because of the presence of evidence that he might 'explain or . . . deny by his testimony' (Cal. Const., art. I, § 13), for it may be inferred that if he had an explanation he would have given it, or that if the evidence were false

---

[2]The check presented to Mrs. Lander was dated the next day.

he would have denied it." [Citations.] In the absence of any such explanation by defendant or any other witness the jury reasonably could infer that defendant had knowledge that the check he gave Mrs. Lander was forged. The fact that defendant passed the check with intent to defraud is fairly deducible from the evidence. ■ It is established law that where the forgery consists in the false making of an instrument, the fact of forgery may imply an intention to defraud. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 687 [161 P.2d 833]; *People* v. *Baender*, 68 Cal.App. 49, 59 [228 P. 536].) There is no logical reason why the same rule should not apply with equal force where a person passes a check as genuine knowing at the time that it is forged. This was impliedly held in *People* v. *Weiskopf*, 60 Cal.App.2d 214, 217-218 [140 P.2d 201]. ■ Furthermore, there is a presumption that an unlawful act was done with an unlawful intent and that a person intends the ordinary consequences of his voluntary act. (Code Civ. Proc., § 1963, subds. 2, 3.) ■ Section 21 of the Penal Code provides in effect that the intent or intention with which an act is done or performed is manifested by the circumstances surrounding the commission of such act. ■ Here the evidence supports the inference and the jury impliedly found that defendant uttered the check with knowledge that Mr. Parker did not sign the check nor authorize anyone to sign it for him. Defendant received merchandise and money for this worthless check. The jury was justified in drawing the inference that the defendant intended to defraud Mrs. Lander in this transaction. That she was in fact defrauded is beyond dispute.

## COUNTS IV, VI AND VII

Count IV charged defendant with forging and passing a $400 check of the Radio Audience Testing Bureau. Counts VI and VII are like charges involving a $50 check and another for $15. These checks were deposited in the checking account opened in the name of Robert Weldon at the Hollywood-McCadden Branch of the Citizens National Bank. Defendant apparently contends that there is nothing in the record to connect him with the forging or passing of any of these checks. Defendant was positively identified by the teller as having withdrawn $200 from the above mentioned Robert Weldon account. He effected this withdrawal by presenting a check (People's Ex. 7) drawn on this account for $200, signed Robert Weldon. While the defendant did not expressly identify himself to the teller as Robert Weldon, it is clear that the

teller knew defendant by that name. ▮ The check for $200 was completely written when it was presented to the teller by defendant. It could, therefore, be properly treated as an exemplar of defendant's handwriting since defendant himself treated it as genuine. Code of Civil Procedure, section 1944, permits comparison with writings "treated as genuine by the party against whom the evidence is offered."

▮ The jury may properly compare handwritings to determine similarity or dissimilarity without the testimony of a handwriting expert. (*People* v. *Storke,* 128 Cal. 486, 488 [60 P. 1090] ; *Castor* v. *Bernstein,* 2 Cal.App. 703, 705 [84 P. 244] ; *People* v. *Davis,* 65 Cal.App.2d 255, 258-259 [150 P.2d 474].)

▮ Using the $200 check as an exemplar of defendant's handwriting, the jury could properly find that defendant signed the signature card by which the Robert Weldon checking account was opened, that he wrote the endorsement, Robert Weldon, on the three checks in question, and that he filled out the deposit slips by which the checks were deposited. Thus defendant's felonious connection with these checks is sufficiently established, and the jury could reasonably find that defendant passed each of the three checks as genuine and that he possessed the requisite knowledge and intent pursuant to a plan and scheme of obtaining money by the use of forged checks.

### Counts II and III

These counts involve the two $50 checks cashed at Ralph's Grocery Company. Defendant contends that the evidence fails to connect him with either of these transactions. He finds support for this contention in the fact that neither of the employees who cashed the checks remembered the person who presented the particular check. However, the circumstantial evidence points to defendant as the person who cashed the two checks in question. The checks were drawn on the same form as that used in the transaction with Mrs. Lander (count I), bore the same fraudulent drawer's signature, viz., that of Mr. Parker, and were drawn in favor of Robert Weldon, as were all the other checks involved in this prosecution. There were only two endorsements on these checks, namely, that of Weldon and the grocery company. As previously pointed out, the jury was at liberty to compare the signature on the back of the checks with the writing on the $200 check (People's Exhibit 7), heretofore mentioned, and could reasonably conclude that the writing in question on all three checks was

made by the same person. Since it was established that defendant wrote Exhibit 7, the jury properly could, and obviously did, impliedly find that he endorsed the two checks represented by counts II and III. Thus defendant was definitely connected with those transactions by substantial evidence that adequately supports the jury's verdict. What we have previously said with respect to defendant's knowledge that the checks there under consideration were forged and that defendant passed them with the intent to defraud, is here applicable and need not be repeated.

### COUNT V

Defendant is charged with grand theft in this count. Here again he contends that the evidence is insufficient to sustain his conviction.

The offense of theft denounced by Penal Code, section 484, includes the crime of obtaining money by false pretenses. (*People* v. *Jones,* 36 Cal.2d 373, 376-377 [224 P.2d 353].)

"To support a conviction of theft for obtaining property by false pretenses, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded." (*People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271].)

As previously pointed out, the evidence sufficiently supports the implied finding that defendant knowingly deposited forged checks in his account at the Citizens National Bank. From this it follows that he knew that he did not in fact have any credit with the bank, yet he drew a check for $200 on his synthetic account and cashed it. He obtained this money through a series of false pretenses, viz., that the checks in question were genuine and that he had funds therefrom to cover the $200 check. The inference that he had the intention to defraud is clear from the chain of events. That the bank was actually defrauded is established. The evidence is ample to sustain defendant's conviction on this count.

The purported appeal from the order denying defendant's motion for a new trial is dismissed. The judgment is affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied January 13, 1958.

---

*Assigned by Chairman of Judicial Council.